ISRAEL GOLDSTEIN, Appellant, *v.* LAZARUS ROSENBERG, Substituted in Place and Stead of HUGO HIRSH and Others, Copartners Doing Business under the Firm Name and Style of HIRSH, NEWMAN & REASS, Respondent.

Second Department, April 16, 1920.

**Vendor and purchaser — marketable title — when maintenance of public garage not a violation of restrictive covenants — when vendee deemed to have known facts disclosed by record.**

In an action by a purchaser in a contract for the sale and purchase of land against the vendor in said contract to recover the sum deposited, the purchaser alleged inability on the part of the vendor to transfer a marketable title, but the question presented was whether the restrictions known to the purchaser, who was also familiar with the location and use of the property, prohibited the maintenance of a public garage on the premises. It appeared that the purchaser agreed to take the property subject to the restrictions contained in the deeds under which the vendor held the title, and that a deed of 1850 prohibited the erection on the premises of buildings for carrying on various trades and occupations commonly described as nuisances, including " omnibus, livery or cow stable," and terminated with the words " or other dangerous, noxious, unwholesome or offensive establishment trade calling or business whatsoever offensive to the neighborhood." On all the evidence,

*Held*, that the maintenance and operation of a public garage on the premises was not a violation of the covenants in the aforesaid deed.

Since the purchaser agreed to take the property subject to the restrictions contained in the deeds under which the vendor held the title, he must be deemed to have known the facts disclosed by the record and every other fact which the inquiry suggested by the record would have led up to.

BLACKMAR, J., and JENKS, P. J., dissent, with opinion.

APPEAL by the plaintiff, Israel Goldstein, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Kings on the 23d day of August, 1919, dismissing the complaint upon the merits, upon the decision of the court, after a trial, a jury having been waived.

The plaintiff, vendee in a contract for the sale and purchase of premises on the northerly side of Lexington avenue, between Nostrand and Marcy avenues, Brooklyn, 120 feet in front by 100 feet in depth, brought this action against the defendant, the vendor in said contract, to recover the sum of $2,000 deposited by the vendee upon the signing of the agreement. The plaintiff alleges readiness on his part to complete the purchase, but inability on the part of defendant to transfer a marketable title.

The contract which is the basis of the action was dated December 6, 1918, the defendant agreeing to sell and plaintiff to purchase the premises, for the consideration named therein, and the plaintiff paid $2,000 on account of the purchase money. It was agreed that the premises were to be conveyed, " Subject to restrictions contained in former deeds and those imposed by the Zoning Ordinance, all of which do not prevent the maintenance of a garage on said premises." Upon the closing day the plaintiff refused to take title, objecting *inter alia* that the property was occupied and used as a public garage, and that the maintenance of such public garage was contrary to a restrictive covenant in a deed in the chain of title, dated May 27, 1850, by which the grantees agreed: " And also to and with their heirs and assigns that the said party hereto of the second part his heirs or assigns or any of them shall not now or at any time or times hereafter erect permit or allow to be erected or carried on or upon the premises hereby conveyed or any part thereof any brewery, distillery, slaughter or melting house or bone boiler, smith shop, cooper or tin shop, forge furnace, steam engine, brass foundry, nail or other

iron factory, sugar bakery, omnibus, livery or cow stable or any soap, candle, starch, varnish, vitriol, glue, ink or turpentine, glass, chemical or gunpowder factory or any factory or establishment for the tanning, dressing or preparing or keeping of skins, hides or leather or other dangerous, noxious, unwholesome or offensive establishment trade calling or business whatsoever offensive to the neighborhood." The defendant asserted that the restrictive covenant did not prevent the maintenance and operation of the public garage upon the property. At the trial it was stipulated that a jury be waived, and that the trial judge view the property before deciding the case. The trial judge found as matter of fact: " That the maintenance of a public garage in and upon the aforesaid premises is not a dangerous, noxious, unwholesome or offensive establishment, trade, calling or business offensive to this neighborhood." He decided that the defendant was entitled to judgment dismissing the complaint upon the merits.

*Samuel Hellinger,* for the appellant.

*Benjamin Reass* [*Hugo Hirsh* and *Emanuel Newman* with him on the brief], for the respondent.

KELLY, J.:

The learned trial justice has considered the objections to the title presented by the plaintiff on the closing day and we agree with his conclusions in his opinion filed. (*Goldstein* v. *Hirsh,* 108 Misc. Rep. 294.) We will refer to but one of the objections, to wit, the claim of the plaintiff, vendee, that the restrictive covenant in the deed of 1850 prevented the maintenance of the garage erected upon the premises. This is not the usual case of a vendee who objects to the marketability of a title because of restrictive covenants discovered in the search thereof. The plaintiff knew of the restrictive covenants when he made the contract, and agreed to take the property subject thereto. He knew that the premises were occupied as a public garage and he desired to use them for that purpose. The question presented by the pleadings is not, strictly speaking, whether the title is marketable, but whether the restrictions known to the purchaser, who was also familiar with the location and use of the property, prohibit

the maintenance of a public garage on the premises. The garage in question was on the property when the plaintiff agreed to purchase. It appears that it was erected under a permit of the board of standards and appeals under the zoning ordinance of the city of New York.

The plaintiff agreed to take the property subject to the restrictions contained in the deeds under which defendant held the title. The plaintiff must, therefore, be deemed to have known the facts disclosed by the record (*Acer* v. *Westcott,* 46 N. Y. 384), and every other fact which an inquiry suggested by the record would have led up to. (*McPherson* v. *Rollins,* 107 N. Y. 316; *Riggs* v. *Pursell,* 66 id. 193; *Kingsland* v. *Fuller,* 157 id. 507; *Moot* v. *Business Men's Investment Assn.,* Id. 201; *Schnitzer* v. *Bernstein,* 119 App. Div. 47.) The only question arising on this restrictive covenant is whether it prevents the maintenance of the garage.

The covenant in the deed of 1850 applied to a parcel of land which included the premises described in the complaint, and prohibited the erection thereon of buildings for carrying on various trades and occupations commonly described as nuisances, including " omnibus, livery or cow stable," and terminating with the words " or other dangerous, noxious, unwholesome or offensive establishment trade calling or business whatsoever offensive to the neighborhood." It is evident that in 1850 when the restrictive covenant was entered into, none of the parties had in mind a garage for the storage of automobiles. We agree with the learned judge at Special Term that the express covenant against " omnibus, livery or cow stable " did not apply to this building. When we depart from the occupations expressly prohibited and seek for interpretation of the general prohibition of other " dangerous, noxious, unwholesome or offensive establishment trade calling or business," we find the qualifying words " offensive to the neighborhood." There is no evidence in the record that the defendant's garage has been, is or will be offensive to the neighborhood. It is true that plaintiff introduced in evidence the record of the board of standards and appeals of the city of New York containing the resolution permitting the defendant's predecessor in title to erect a garage upon the premises, which record is said to contain objections to the permit filed by

five individuals and consents by two, but there is no evidence from any one of them justifying a finding that the garage is or will be offensive. Only one of the objectors was called as a witness for the plaintiff, and he testified that as constructed he did not think it any detriment and that he had no objection to it. While it may be that we should not take judicial notice of the conditions prevailing in the block in which the garage is located, the evidence at the trial fully justified the finding of the learned trial judge that this garage is not offensive to the neighborhood. And this finding was made after the judge had personally examined the locality in pursuance of a stipulation by the parties. The evidence shows that there is an elevated railroad operated in Lexington avenue, that there are several garages in the immediate neighborhood, liquor stores on the corners, a tailor shop, a barber shop, a large warehouse on the opposite side of the street, and the only residences testified to are tenement houses of the cheapest kind. One of the witnesses at the trial testified that the defendant's garage was the "most beautiful building on the entire block." It would seem that the conclusion of the trial judge was justified by the evidence. It cannot be said as matter of law that the defendant's garage is noxious, unwholesome or offensive to this neighborhood, and the doctrine *noscitur a sociis* does not justify the court in finding offensive conditions which are not shown to exist, but which, on the contrary, are negatived by the evidence in the case. We are satisfied that there is no reasonable probability that the maintenance of the garage in question in a legitimate and proper manner could be enjoined as violative of the covenant.

The judgment should be affirmed, with costs.

MILLS and PUTNAM, JJ., concur; BLACKMAR, J., reads for reversal, with whom JENKS, P. J., concurs.

BLACKMAR, J. (dissenting):

I dissent.

The prohibition against the maintenance of the garage is not found in the use of the word "stable." If it be prohibited, it is by the general clause against offensive business. Under the doctrine of *noscitur a sociis*, that means a business that is

offensive in the same way that a stable or other prohibited use is offensive. A stable is offensive to the sense of smell and to the sense of hearing, and is unsightly and, therefore, offensive to the eye if it should be placed in a residential neighborhood. Whether a garage is offensive in the same way or not is a question which may be raised in an action by any property owner interested in the restriction. It is certainly as offensive to the sense of hearing as a stable, if not more so. There is to a less extent an offense to the sense of smell, due to the oil and gas used. I, therefore, think that this is not a case where the purchaser is bound to take the risk of litigation on this point.

Whether or not the change or alteration in the condition of the neighborhood is such as to render it inequitable specifically to enforce this covenant against one seeking to erect a garage, is, under the case of *Trustees of Columbia College* v. *Thacher* (87 N. Y. 311), also a question which may be the subject of judicial determination. The general rule is that covenants of restrictions are enforcible by specific performance, and the burden rests upon the defendant in such an action to show a condition of the neighborhood which makes it inequitable to enforce them. This is a burden which a purchaser should not be compelled to assume.

I think the title is unmarketable.

JENKS, P. J., concurs.

Judgment affirmed, with costs.