ROSANNA BATCHELOR, Respondent, *v.* EUGENE E. HINKLE et al., Appellants.

Real property — deed — restrictive covenant — when court of equity will enforce it — when injunction restraining violation of such covenant should be denied — agreement between owners of adjoining city lots, for themselves, heirs and assigns, not to erect buildings unless a certain distance from street — when such covenant will not be enforced in equity as against subsequent purchaser of such lots.

1. If a building restriction is of substantial value to the dominant estate, a court of equity may enforce it even if the result would be a serious injury to the servient estate, but it will not extend its strong arm to harm one party without helping the other. An injunction that bears heavily on the defendant without benefiting the plaintiff will always be withheld as oppressive. (*McClure* v. *Leaycraft*, 183 N. Y. 36, 44, followed; *Zipp* v. *Barker*, 166 N. Y. 621, distinguished.)

2. In the year 1849 the owners of the land lying in two blocks in the city of New York entered into an agreement as to the property therein described for the purpose of making it "a desirable location for residences and buildings of the first class," which agreement provided, among other things, that the buildings to be erected on these blocks should "be set back uniformly on a line five feet from the sides of said streets respectively, so as to form court-yards of five feet wide on each side of the said two blocks upon the said street." Thereafter the property was improved and built upon in the manner contemplated in the agreement, but later the neighborhood underwent a change, business encroaching upon it, and the land to which the covenant related is no longer a desirable location for residences. At about the time of the commencement of this action, the defendants began the erection of a twelve-story building, now completed, on their lots, and have carried the building out to the street line. Plaintiff, an owner of a building about 115 feet distant therefrom, brought this action to enjoin its erection. The findings are, among others, that the object which the parties to the covenant intended to accomplish has practically been defeated in the lapse of time; that the plaintiff has suffered no substantial damage from the erection of the defendants' building on the street line, but, on the contrary, that both the market and rental value of her property, and of all the other property in the

block, have been increased thereby; that the defendants' building cannot materially interfere with the actual use of her property; that the defendants, in good faith, erected their building on the street line, believing they had the right to do so, and that it would cost $66,000 to remove that part of the structure which stands on the five-foot space. *Held*, that the covenant is not one that a court of equity will enforce and that plaintiff should be remitted to an action at law for her damage.

*Batchelor* v. *Hinkle*, 149 App. Div. 910, reversed.

(Argued January 15, 1914; decided February 24, 1914.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered February 8, 1912, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

In the year 1849 the owners of the land lying in the two blocks bounded by Broadway, Twenty-sixth street, Sixth avenue and Twenty-fourth street, in the city of New York, entered into an agreement for the purpose of making the property a desirable location for residences and buildings of the first class. The parties to the agreement covenanted and agreed for themselves, their heirs and assigns, not to carry on, or permit to be carried on, any noxious or offensive trade or business on their respective lots, and furthermore covenanted and agreed as follows: "No building shall be erected upon the front of the lots in said two blocks which shall not be built of brick, stone or marble, and cover the whole width of the lot, and which shall not be at least three stories high above the street, and also that the buildings to be erected on Twenty-fourth, Twenty-fifth and Twenty-sixth streets upon said two blocks *shall be set back uniformly on a line five feet from the sides of said streets respectively, so as to form court-yards of five feet wide on each side of the said two blocks upon the said street."*

The plaintiff and the defendants in this action claim under the Farmers' Loan and Trust Company, one of the

parties to the contract mentioned, and their deeds are made subject to the restrictions contained in the agreement. The plaintiff's property is known as No. 26 West Twenty-sixth street, and she became the owner thereof in 1902. The defendants' property, which lies further from Broadway, is known as Nos. 38–42 West Twenty-sixth street, and the defendants became the owners thereof in 1908.

The defendants upon acquiring title to the lands owned by them, set about to erect thereon a loft building twelve stories high, covering the whole of their lots, with the front walls standing on the street line, and including the courtyard space, whereupon the plaintiff gave the defendants notice in writing to comply with the covenant, and erect their building five feet back from the street.

The plaintiff commenced this action against the defendants to restrain them from building out to the street line, and applied for a temporary injunction in the action. The defendants then ceased work on that part of the building which encroached on the courtyard space. The application for a preliminary injunction was denied, and on the first trial of the action which followed the plaintiff's complaint was dismissed, and then the defendants proceeded with the work of construction and completed their building. The judgment was, however, reversed in the Appellate Division, and a new trial ordered. The second trial was substantially in favor of the defendants, but the judgment was again reversed in the Appellate Division. Upon the third trial the court found the facts as they now appear in the record, but in deference to the opinion of the Appellate Division granted a judgment in favor of the plaintiff, which the Appellate Division has affirmed. From that determination this appeal is taken.

*Charles A. Collin* and *James W. McElhinney* for appellants. The facts, as found by the trial court, that

the enforcement of the restrictive covenant in this case would confer no benefit on any one but inflict actual damage upon both the plaintiff and the defendants, in connection with the other facts, that the neighborhood has been radically transformed from a residential to a business neighborhood; that the plaintiff herself has violated the literal provisions of the restrictive covenant and has never devoted her building to residence uses; that the defendants in good faith believed, and had the best of reasons for believing that the courtyard restriction was obsolete — all these facts in combination present an overwhelming demonstration of the inequity and injustice of enforcing the restrictive covenant as required by the judgment appealed from. (*McClure* v. *Leaycraft,* 183 N. Y. 44; *Goodhue* v. *Cameron,* 142 App. Div. 470; *Pagenstacher* v. *Carlson,* 146 App. Div. 740; *Kitching* v. *Brown,* 180 N. Y. 414; *Purdy* v. *Manhattan Ry. Co.,* 13 N. Y. Supp. 295; *Deeves* v. *Constable,* 87 App. Div. 352; *Lattimer* v. *Livermore,* 72 N. Y. 174; *Alvord* v. *Fletcher,* 28 App. Div. 493; *Olcott* v. *Knapp,* 96 App. Div. 208; *Coates* v. *Cullingford,* 147 App. Div. 29.)

*Payson Merrill* and *Alfred H. Holbrook* for respondent. The purpose and effect of the agreement of 1849 was to provide that all buildings of every description on the north side of Twenty-fourth street, on both sides of Twenty-fifth street, and on the south side of Twenty-sixth street, should be forever set back five feet from the street lines. (*Woolsey* v. *Funke,* 121 N. Y. 87; *Nicoll* v. *Sands,* 131 N. Y. 19.) The plaintiff by the agreement acquired property rights which it is the duty of a court of equity to enforce, regardless of the question of pecuniary damages. (*Zipp* v. *Barker,* 40 App. Div. 1; 166 N. Y. 621; *Columbia College* v. *Thacher,* 87 N. Y. 311; *Manners* v. *Johnson,* L. R. [1 Ch. Div.] 673; *Webb* v. *Portland Mfg. Co.,* 3 Sumn. 189.) The defendants having gone on with their building after notice of plaintiff's

claim cannot be heard to complain of their loss if compelled to undo their wrongful act. (*Corning* v. *T. I. & N. Co.*, 34 Barb. 485; 40 N. Y. 191; *Whalen* v *Union Bag & Paper Co.*, 208 N. Y. 1; *Tucker* v. *Howard*, 128 Mass. 361; *Ives* v. *Edison*, 124 Mich. 402; *Manners* v. *Johnson*, L. R. [1 Ch. Div.] 673; *Krehl* v. *Burrell*, L. R. [7 Ch. Div.] 551; *Daniel* v. *Ferguson*, L. R. [2 Ch. Div.] 27; *Colls* v. *H. & Q. Stores*, L. R. [App. Cas. 1904], 192.)

CUDDEBACK, J. At the time the agreement of 1849 was made, the property affected thereby was vacant, but it was the design of the parties to the contract to make the land a desirable location " for residences and buildings of the first class." To accomplish that purpose they provided among other things that the buildings erected on the land should be " set back uniformly on a line five feet from the sides of the said streets respectively so as to form court-yards of five feet wide on each side of the " streets. The courtyards, as the finding is, were for ornamental purposes.

Thereafter the property was improved and built upon in the manner contemplated in the agreement. The dwelling houses constructed were the brownstone or brick structures common in New York, three or four stories high, with the usual high stoop leading to the parlor floor, and the usual basement with the courtyard in front thereof, inclosed by a stone coping or iron railing setting it off from the sidewalk proper.

Between the time when the contract of 1849 was made, and the time when the parties to this action acquired title, a period of more than half a century, the neighborhood underwent a change. Business encroached upon it, and the land to which the covenant related was no longer a desirable location for residences. The old dwellings in some instances were turned into boarding houses, and in other instances were remodeled for business purposes.

The old courtyards were removed when the buildings were remodeled, and the five-foot courtyard space was used in connection with the business to which the premises were put. The plaintiff's property has been so transformed. She has removed the old high stoop and courtyard, put a new front in the structure five feet back from the sidewalk, and used as space for a vault the space reserved for a courtyard.

Some few years later the property in the block became too valuable to be used as boarding houses, and the old buildings were too small to be used profitably for business purposes. At about the time of the commencement of this action there was a demand in the neighborhood for modern structures twelve or more stories high. The "set-back" covenant is a detriment to property on which such tall buildings are to be erected, for the reason that it curtails the floor space in the building by which the rental value is fixed. The defendants have erected a twelve-story building on their lots, and in order to get as much floor space as possible and better light in the rear, have carried the building out to the street line. The defendants were first in the block to build over the five-foot space.

The findings are, that the object which the parties to the covenant intended to accomplish has practically been defeated in the lapse of time, and that courtyards designed for ornament are out of place in front of buildings intended for commercial purposes; that the plaintiff has suffered no substantial damage from the erection of the defendants' building on the street line, but, on the contrary, that both the market and rental value of her property, and of all the other property in the block have been increased thereby; that the defendants' building is 115 feet distant from the plaintiff's lot and cannot materially interfere with the actual use of her property; that the lots on the north side of Twenty-sixth street, where there is no "set-back" covenant in force, are largely

built up to the street line with commercial buildings; that the owners of all the property on the street affected by the covenant, except the plaintiff and the owner of the lot at the corner of Broadway, are willing to have the restriction abrogated; that the defendants, in good faith, erected their building on the street line, believing they had the right to do so, and that it would cost $66,000 to remove that part of the structure which stands on the five-foot space.

The plaintiff objects to the encroachment made by the defendants' building on the courtyard space as a violation of the covenant in the agreement of 1849. Has she such a right under the covenant as a court of equity will enforce, or shall she be remitted to an action at law for her damages?

The plaintiff cites and relies on the decision in *Zipp* v. *Barker* (40 App. Div. 1; 166 N. Y. 621). In that case the covenant was not to erect on the land conveyed any building or structure other than fences or ornamental inclosures within the several distances specified in the covenant from the sides of certain streets named, the intent being to insure an open space in front of the buildings on the property affected by the covenant and the observance of uniformity in the location of building lines; and also to leave the several owners, for the time being, of the property at liberty to inclose and improve as courtyards or ornamental grounds the space between the front of their buildings and the lines of the street.

In *Zipp* v. *Barker* the defendants' land, with a building thereon which complied with the covenant, was situate at the corner of Fulton street and Elm place in Brooklyn and the plaintiff's property adjoined fronting on Elm place. With respect to Elm place the covenant provided that no structure should be erected within fifteen feet of the street line. Upon the plaintiff's premises were large buildings standing back from the street line and the defendants had erected a structure one story high in

front of their property to approximately the line of Elm street. The court said in granting an injunction against the defendants: "The plaintiff's property is improved by large buildings and the structure of the defendants adjoining their property is especially injurious to her and cuts off her view and access to Fulton street which is particularly valuable."

The purpose of the covenant in *Zipp* v. *Barker* was entirely different from the purpose sought to be accomplished by the covenant in this case. In *Zipp* v. *Barker* the intention was to provide for open spaces between the buildings erected on the property conveyed and the lines of the street and to establish uniformity in the location of building lines, which the court said, "is just as valuable for a business as for a residential neighborhood." But in the case under consideration the intention was not primarily to fix a building line but to make the block attractive and desirable as a place of residence, a purpose which has been defeated by a radical change in the character of the neighborhood.

Furthermore, in this case the defendants' building does not adjoin the plaintiff's lot but is 115 feet distant therefrom and the building does not cut off access to the plaintiff's property or materially interfere with the view thereof. The plaintiff has suffered no damage, while to grant the relief which she seeks would greatly damage the defendants.

I think the case is governed by the decision of this court in *McClure* v. *Leaycraft* (183 N. Y. 36, 44). In that case there was a covenant against the erection on the defendant's lands of "any tenement, apartment or community house." The court found that many apartment and tenement houses had been erected in the vicinity of the defendant's property subsequent to the date of the covenant, that the character of the neighborhood had undergone a change, and that the enforcement of the covenant would cause great damage to the defendant and would

not benefit the plaintiff. The defendant was about to build an apartment house on his land, and in denying the plaintiff's application for an injunction the court said: "The object of the parties in making it (the covenant) has been defeated by the unexpected action of persons not under the control of the defendant. Under the circumstances now existing the covenant is no longer effective for the purpose in view by the parties when they made it, and the enforcement thereof cannot restore the neighborhood to its former condition by making it desirable for private residences. If the building restrictions were of substantial value to the dominant estate, a court of equity might enforce it even if the result would be a serious injury to the servient estate, but it will not extend its strong arm to harm one party without helping the other, for that would be unjust. An injunction that bears heavily on the defendant without benefiting the plaintiff will always be withheld as oppressive."

The plaintiff also argues that the willingness of the other owners, with only one exception, of the property on the south side of Twenty-sixth street, to cancel and discharge the restrictive covenant in the agreement of 1849, does not affect her right to have the covenant enforced. That is true, and, standing by itself, evidence as to what such other owners will consent to would be of no value. But a court of equity may take into consideration the fact that all the interested persons, or the most of them, are willing to waive the enforcement of a covenant when injunctive relief to restrict its violation is sought by one of their number.

The plaintiff assails the findings of the court, which are to the effect that the restrictive covenant is a detriment to all the property in the block, and lessens both the rental and fee value thereof, because such findings rest solely on the testimony of expert witnesses. The testimony of expert witnesses is at least some evidence to support the findings and for that reason the decision is conclusive in

this court. (*National Bank of Deposit* v. *Rogers,* 166 N. Y. 380, 392; *Cassidy* v. *Uhlmann,* 170 N. Y. 505.)

In determining whether a court of equity will compel observance of a covenant restricting the use and occupation of land, each case must depend upon the facts which it presents. Upon the facts found in this case it would in my opinion be inequitable to grant the judgment asked for by the plaintiff.

I recommend that the judgment appealed from be reversed and new trial granted, costs to abide event.

WERNER, HISCOCK, CHASE, COLLIN and MILLER, JJ., concur; WILLARD BARTLETT, Ch. J., not sitting.

Judgment reversed, etc.