New York Eye and Ear Infirmary, Plaintiff, *v*. William Chriso-malis and William Forbes Morgan, Jr., as Executor of and Trustee under the Last Will and Testament of Ellen Robinson Morgan, Deceased, Defendant.

Supreme Court, New York County, February (Received March, 1923).

Injunctions — restrictive covenants — change of character of neighborhood — when court of equity will not interfere.

In the year 1847 the owners of property on the east side of Second avenue extending from Tenth street to Fifteenth street, in the city of New York, executed and recorded a mutual agreement to run with the land subjecting the property fronting on the avenue for a depth of eight feet to a restriction for the use thereof as a private courtyard and not to be occupied by any house or edifice or in any other manner and that no building of any kind should be erected nearer than to within eight feet of the line of Second avenue as then established. Defendants have erected upon the eight-foot strip in front of their premises a structure about ten feet high. Plaintiff seeks to enjoin defendants although it concedes that the neighborhood has changed and is not of a residential character. From the testimony it appears that there are a number of encroachments on the restricted strip and that neither light, air nor access in relation to plaintiff's building are affected by the structure complained of, and that the enforcement of the covenant would impair the value of the premises for business purposes. *Held*, that the plaintiff has suffered no damage that would warrant the interposition of a court of equity on its behalf.

Action for an injunction.

*Samuel Riker, Jr.*, for plaintiff.

*J. William Hill*, for defendant Chrisomalis.

*Blackwell Brothers*, for defendant Morgan, as executor.

Mitchell, J. This action is brought to secure judgment enjoining the defendants from constructing or continuing the erection of a structure in front of defendants' premises on the southeast corner of Second avenue and Fourteenth street, within eight feet of the easterly side or line of Second avenue, and directing the defendants to remove any and all constructive work

already done on said eight-foot strip, on the ground that such structure is a violation of a restrictive covenant. It appears that in the year 1847 Julia Stuyvesant and others named, being the owners in severalty of a tract of land including all the property on the easterly side of Second avenue extending from Tenth to Fifteenth streets, executed and recorded a mutual agreement to run with the land and to bind their successors in title, in part as follows: " That so much of the said devised lands as fronts or lies contiguous to the Second avenue between Tenth street and Fifteenth street to the distance of eight feet from the southeasterly line of said avenue as now established shall * * * be forever used as private court yards or spaces and not be occupied by any house or edifice nor in any other manner," and " that no messuage, dwelling house, edifice or building of any kind shall at any time hereafter be erected upon any or either of the lots of land included in the above devise and either bounded and fronting upon the Second avenue and lying between Tenth street and Fifteenth street * * * shall approach nearer than to within eight feet of the southeastermost line of the said Second avenue as now established * * * according as the said lots shall front upon the Second avenue * * *, and that the northwestermost line or wall of every messuage, dwelling house, edifice or building which shall at any time hereafter be erected or built upon any of the lots (included in said devise) and bounded or fronting upon the Second avenue and lying between Tenth street and Fifteenth street * * * shall be placed at the uniform distance of eight feet from the southeastermost line of the Second avenue as now established * * *, according as the said lots shall front upon Second avenue." The agreement also contains a covenant against nuisances as follows: " That the parties hereto, their heirs or assigns shall not nor will not at any time or times hereafter * * * on or allow to be erected or carried on upon *. * * the above-mentioned devise and situate between * * * street, and between the * * * distillery, slaughter house, blacksmith shop, forge or furnace, or soap, candle, starch, varnish, vitriol, glue, ink or turpentine factory or any factory for tanning, dressing or preparing skins, hides or leather or any sugar bakery, cow or livery stable or any other dangerous or offensive establishment whatsoever." The defendants have erected upon the eight-foot restricted strip of land in front of their premises a structure about ten feet high and occupying the entire strip. The plaintiff concedes that the neighborhood is now such that if the restriction is held to be residential in character a court of equity will not enforce it. Plaintiff's counsel claims that this restriction is governed by

the case of *Zipp* v. *Barker*, 40 App. Div. 1; affd., 166 N. Y. 621; that it applies equally to all classes of property, residential or business; that it has no relation to the character of the occupancy and is not in any way affected by a change in the character of the neighborhood. Plaintiff's counsel concedes that the neighborhood has changed and defendants' expert testified that the neighborhood is a business one on both sides of the avenue. The Appellate Division in the case of *Wallack Const. Co.* v. *Smalwich Realty Corp.*, 201 App. Div. 133, 134, observed that the authority of *Zipp* v. *Barker, supra*, " has been largely impaired by the case of *Batchelor* v. *Hinkle*, 210 N. Y. 243." It seems now to be settled law within this state that many of these restrictive covenants will not be enforced in equity where the neighborhood has changed so that the street upon which the property is situated is mainly devoted to business purposes rather than to residential building. Courts of equity are not disposed to enforce restrictive covenants which are applicable and beneficial to residential property, with little or no value, where the property is devoted to business purposes. *Wallach Const. Co.* v. *Smalwich Realty Corp., supra.* Plaintiff calls attention to the fact that the agreement contains no covenant against business except the covenant against dangerous or offensive establishments which, of course, is not a covenant against business generally. The agreement under consideration by the Court of Appeals in *Batchelor* v. *Hinkle, supra*, contained a similar covenant " not to carry on, or permit to be carried on, any noxious or offensive trade or business on their respective lots." It clearly appeared in that case that the covenantors did not intend to restrict the area affected to residences exclusively, for their purpose is specifically stated in the agreement as that of " making the property a desirable location for residences and *buildings of the first class* " (italics mine). The court there refused to enforce the restrictive covenant, holding that " the intention was not primarily to fix a building line but to make the block attractive and desirable as a place of residence, a purpose which has been defeated by a radical change in the character of the neighborhood." In this case, as in *Batchelor* v. *Hinkle, supra*, the exceptions contained in the covenant against objectionable callings indicate that the covenantors did not intend to exclude all kinds of business, but those excluded are such as would make the property affected undesirable for residential purposes. The provision of the agreement reserving the restricted strip for " private courtyards or spaces " exclusively points to a purpose to make the property " attractive and desirable as a place of residence." There is no basis for holding in this case that the strip reserved is just as

valuable for a business as for a residential neighborhood. When used for private " courtyards " or " spaces " in front of dwellings it possesses an ornamental attractiveness, an openness and increased distance from passing traffic that is always highly desirable in a residential neighborhood. With the street turned over to commerce, however, these factors no longer play their former part, and on a broad avenue the loss of light and air by reason of the occupation of an eight-foot strip in front of the building line would be of little, if any, importance commercially. In *Zipp* v. *Barker, supra,* the court in granting the injunction said: " The plaintiff's property is improved by large buildings, and the structure of the defendants adjoining their property is especially injurious to her and cuts off her view and access to Fulton street, which is particularly valuable." The Court of Appeals, in distinguishing the case of *Batchelor* v. *Hinkle, supra,* from that just referred to, observed that in the *Batchelor* case the defendant's building did not adjoin plaintiff's lot, did not cut off access to plaintiff's property or materially interfere with the view thereof, all of which may be said with equal truth in this case. The plaintiff has suffered no damage that would warrant the interposition of a court of equity on its behalf. Neither light, air nor access is affected by the structure complained of. Access is in no way affected, and plaintiff's expert admitted on cross-examination that the defendants' structure does not affect light and air and could not affect property fifty feet away, so far as light and air were concerned, even if the building were carried higher. Plaintiff's expert denied that his testimony that the set-back restriction was an asset to property in the neighborhood was founded upon any advantage in the way of light and air and said that his opinion was founded entirely on market values. When asked to state what handicap to the plaintiff's property was created by the structure complained of he stated: " It means that the adjoining owners have also got to violate the restriction in order to get the full advantage of the rentability of their property." The fact that plaintiff finds it undesirable to obtain this advantage because of the expense involved in tearing out the front of its building, and rebuilding same is not a sound reason for enjoining the defendants from building the structure in question and thus enjoying the advantage of the increased rentability of their property. It is undoubtedly true, as the defendants' expert testified, that a setback restriction in a section mainly devoted to business materially reduces the value of the property. Upon the record it appears to me to be clearly established that to enforce the restrictive covenant would largely impair the value of the premises for business purposes. The testimony discloses that there are a

number of encroachments on the restricted strip from Tenth to Fifteenth streets on the easterly side of Second avenue, the area covered by the agreement. It appears that the plaintiff has excavated a substantial portion of the strip in front of its premises and has constructed therein a stairway, an inclosure under the stoop and a passageway from the main building to the street vaults. In view of the language of the covenant that the restricted strip was to be used for " private courtyards or spaces and not to be occupied by any house or edifice nor in any other manner," defendant's counsel has well raised the question whether this occupation of the strip for hospital purposes is one within the contemplation of the parties to the covenant. The conclusions which I have reached on the points hereinbefore covered, however, make it unnecessary to pass upon this question. Judgment for defendants. The findings submitted have been passed upon. Submit decree on notice.

Judgment accordingly.