IRVING R. TODD and ROCHELLE HEIGHTS ASSOCIATION and Others, Plaintiffs, *v.* NORTH AVENUE HOLDING CORPORATION, Defendant.

Supreme Court, Westchester Special Term, July, 1923.

Real property — restrictive covenants — use of property in tract for one family dwellings only — when threatened violation will be enjoined.

When plaintiffs and the defendant as well as the other owners of plots in a park shown upon a map duly filed by the owner of the whole tract of land, derived their title to their respective properties by mesne conveyances from a common grantor subject to a general restrictive covenant running with the land limiting the use of all the property within the park so that there could be erected thereon no " building other than one dwelling house constructed for the use of one family only," nor maintained thereon " any manufactory, trade or business whatsoever," each lot owner in the park has an easement or right in the defendant's premises which will be violated by the erection of a building for business purposes unless intervening circumstances have made the restrictive covenant unenforcible at the suit of the other lot owners in the park.

Where conceding the proposed violation by defendant of the express terms of the restriction by the erection on its vacant lot of a building for business and apartment purposes which in no respect complies with said restriction and no inequitable conduct on the part of plaintiffs is shown, they having implicitly kept said covenant on their part, the plaintiffs are entitled to enforce the covenant in equity against the defendant unless the residential character of the neighborhood has been so changed as would make such enforcement inequitable.

The defendant having in pursuance of a deliberate plan to violate the restrictive covenant protected itself at the time it purchased its lot by an agreement with its grantor for a refund of the purchase price in the event that its plan of improvement of the lot was restrained by the court, its position in that respect did not appeal to a court of equity.

One of the plaintiffs, a corporation, which had taken a conveyance of the fee of the streets in the park and certain reserved strips which must also be subject to the easement of the property owners to use the same as roadways and otherwise, has no standing to sue nor is it injured in any way by defendant's threatened violation of the restriction, and the complaint of said corporation will be dismissed upon the merits, but without costs, and judgment directed in favor of the individual plaintiffs for the relief demanded, with one bill of costs and disbursements.

SUIT for an injunction.

*Mayer, Ehrich & Block* (*Louis S. Ehrich,* of counsel), for plaintiffs.

*Seacord, Ritchie & Young* (*Isaac N. Mills* and *Albert Ritchie,* of counsel), for defendant.

TAYLOR, GEO. H., J.  In June, 1905, the Sickles Estate Improvement Company owned the acreage which now in its improved state is known as Rochelle Heights, a highly restricted residence park in the city of New Rochelle, in which have been erected about

160 private dwellings, which constitute residences of a high type, several of which are, occupied by the individual plaintiffs respectively, for dwelling purposes; all of the residences in the park are used as one family private dwellings; business has not invaded the confines of this beautiful residence park.

A map of the property showing streets and avenues and the lots and other subdivisions thereof, was prepared on behalf of the then owner and filed in the office of the register of Westchester county in volume 18 of maps, at page 59, in the month of June, 1905; numerous sales have been made from time to time of lots and plots according to the map, and to the extent indicated the restricted property has been improved in accordance with the restrictions hereinafter referred to.

The plaintiff Mr. Todd, owning lot No. 3 in block A on the map, his former co-plaintiff Mrs. Cornelius (formerly the owner of lot 2 in block A), the defendant herein, as well as the other owners of plots in the park, derive their title to the same by mesne conveyances from the original grantor, Sickles Estate Improvement Company, subject to a general restrictive covenant running with the land, which covenant was the result of what I find to be a general plan and scheme on the part of the grantor to improve and develop the land, with high class residences, the map being filed in accordance with the plan. This fact, coupled with the restriction to residences hereinafter referred to, vested rights in all the subsequent lot owners, identical with those rights which have been the subject of discussion in a recent case in our Court of Appeals. *Booth* v. *Knipe*, 225 N. Y. 390, 394. Here, as in the case just cited, "Uniform restrictions were part of the plan both as conceived and as executed. They were imposed by the common grantor upon the sale of every lot. The slight variances of phraseology suggest no variance of substance." *Booth* v. *Knipe, supra.*

The covenant and restriction in the case at bar, in effect, limit the use of all property in Rochelle Heights so that (*inter alia*),

(a) There cannot be maintained thereon "any manufactory, trade or business whatsoever."

(b) There can be erected thereon no "building other than one dwelling house constructed for the use of one family only," the frontage of a given lot to be used, the cost of the dwelling to be erected, as well as other features making for high residential character, being duly prescribed in the restriction, which was of record and which legally bound all the property within the restricted area, and every grantee thereof by mesne conveyances from the Sickles Estate Improvement Company.

In the absence of intervening circumstances such as were sug-

gested in *Trustees of Columbia College* v. *Thacher,* 87 N. Y. 311, and in those other cases (see *inter alia McClure* v. *Leaycraft,* 183 id. 36; *Deeves* v. *Constable,* 87 App. Div. 352; *Batchelor* v. *Hinkle,* 210 N. Y. 243; *Roth* v. *Jung,* 79 App. Div. 1) which have followed in principle that landmark in the jurisprudence of our state, it is very clear that such restrictions so imposed are enforcible by the injunctive process of a court of equity, at the suit of a neighboring owner whose lot is affected by the same restrictive plan or scheme (*Booth* v. *Knipe, supra; Thompson* v. *Diller,* 161 App. Div. 98; *Dollard* v. *Whowell,* 174 id. 403; *Holt* v. *Fleischman,* 75 id. 593, and cases cited), in the absence also of some inequitable conduct on the part of the given complainant, such as laches, acquiescence, or coming into equity with what is termed " unclean hands." *Thompson* v. *Diller, supra; Alvord* v. *Fletcher,* 28 App. Div. 493.

The defendant owns a now vacant plot at the southeast corner of Fifth avenue and North avenue, as shown on the map. It is the northerly part of lot No. 1 in block A, having a frontage of 101.83 feet on North avenue as it curves, and a frontage of 111.58 feet on Fifth avenue. It is not disputed that this property is burdened with the restrictive covenant above referred to, which upon its face at least forbids the defendant from erecting the rather imposing building for business and apartment purposes, which in no respect complies with the restrictions, which building the defendant admits that it will erect thereon unless restrained by this court. Its counsel, learned, eminent and distinguished, have presented in their brief, arguments in which they insist with emphasis and in a way that is almost persuasive because of its ingenuity and learning, that because of the growth of business developments in the neighborhood, legally as to the plot of the defendant in question, the restrictive covenant has become unenforcible under the principles set forth in the leading case of *Trustees of Columbia College* v. *Thacher, supra,* and the subsequent cases in the books which follow, explain and elucidate those principles; and they demonstrate what I find to be the fact, that the defendant's property with the restriction thereon, assuming the restriction to be enforcible, is of a value of only $3,000, because of surrounding business property and other conditions on North avenue and Fifth avenue, while it would be worth, if it could be improved with the projected business building, the sum of $30,000.

It is to be noted that the business development has not at all invaded Rochelle Heights since the property was laid out and restricted, except temporarily in what I find to be a negligible instance as to lot No. 2 in block A, where a small carpenter shop, long since discontinued, existed for a time in a stable building near

the Fifth avenue front of the said lot 2 in block A.    The defendant insists, in effect, that the individual plaintiffs and those similarly situated have not the right to the specific performance of this covenant in equity against the defendant; but that they must be relegated to an action at law to enforce their right to damages for the conceded violation of the restrictive covenant, which the defendant admittedly contemplates in the proposed erection of this building, in plain violation of the terms of the covenant.    The defendant's real estate witnesses insist that the building proposed will have no detrimental effect upon any property in the park, except the property immediately adjoining the defendant's lot, namely, lot No. 2, which, since this litigation began, has been acquired in the interest of the defendant.    The plaintiffs' real estate experts insist that some detrimental effect will be had by this business construction, upon every other lot in the residence park, however remote from the building in question.    I think, however, that the litigation must be determined upon a principle other than the one involved in the effect or non-effect of the proposed violating construction, namely, upon the principle that each lot owner in the park has an easement or right in the defendant's premises, which will be violated by the erection of a business building thereon; this is clearly true unless some intervening circumstances have made the restriction unenforcible at the suit of the other lot owners in the park.

A scheme of development for residence purposes formed by the common grantor and providing a general restriction upon the character of the development, is not new in our jurisprudence.    Judge Putnam referred to a similar situation in *Thompson* v. *Diller*, *supra*, when he said: " The facts show an elaborated design for the erection of buildings in a select neighborhood by what the English courts call a ' building scheme,' in which the lotted lands are laid out for private dwellings, and reserved from disturbance by inroads of business.    Restrictive covenants to that end are familiar.    They exclude buildings other than private residences; they determine their character by providing for a minimum cost, with a set-back restriction to keep the houses from being too near the street.    (*Silberman* v. *Uhrlaub*, 116 App. Div. 869.)    Besides protecting from the encroachment of trade, and guarding against cheaper houses, provision is made for only one dwelling on a specified lot, with other efforts for uniformity of general effect.    The objects are said to be for ' light, air, ornamentation, or the exclusion of occupations which would render the entire property unsuitable for the purposes to which it could be most advantageously devoted.' (*Trustees of Columbia College* v. *Lynch*, 70 N. Y. 440, 446.) "

There can be no doubt that such covenants are valid and enforcible in equity against subsequent purchasers, who buy with notice thereof. *Thompson* v. *Diller, supra; Booth* v. *Knipe, supra.* I find that in the instant case the covenant was intended to be for the benefit of the successive lot owners, and that the attempted use by the defendant for business purposes is a breach of the covenant, which may be restrained by injunction in an action brought by the owners of neighboring dwellings. *Booth* v. *Knipe, supra.* Therefore, it is clear that the individual plaintiffs, who are owners respectively of residences in Rochelle Heights, have a standing to bring this injunction suit; and in view of the conceded proposed violation of the express terms of the restriction by the defendant, and there being shown no inequitable conduct on said plaintiffs' part precluding recovery in equity, the plaintiffs must prevail in this action, unless the residential character of the surroundings has declined, as was the case in *Roth* v. *Jung, supra,* causing a change in the neighborhood which would make it inequitable to enforce the covenant in equity. *Trustees of Columbia College* v. *Thacher, supra.* In this connection it is to be noted again that business has not invaded the confines of Rochelle Heights, and that the only claim by the defendant is that the neighborhood change has been brought about by the ever-increasing encroachments of business upon the westerly side of North avenue opposite the entrance to the park, and upon the easterly side of the same avenue at points to the north and south of Rochelle Heights respectively. It is true that equity will refuse to enforce a restriction of the use of property to which all property in the neighborhood is subject, where the conditions have so changed that the restriction has become valueless to the adjacent property and onerous to the property to which it is subject, and that the parties, in such an event, will be left to their remedy at law. There is no question about the validity of this legal proposition in cases where it applies. *Batchelor* v. *Hinkle,* 132 App. Div. 620; affd., 210 N. Y. 243.

The existence of the covenant and its proposed violation being conceded, and there being no doubt under the authorities of the standing of the individual plaintiffs to sue for injunctive relief, the first subject of inquiry, therefore, raised by the learned presentation of the defendant's case, is whether the neighborhood on both sides of North avenue near the residence park in question, has been shown by the defendant, upon whom the burden of proving it is placed, to have changed so that the court would be warranted in relieving the defendant's plot from the binding effect of the restrictive covenant, as far as equity is concerned. In this branch

of the discussion I am assuming what I believe to be at least doubt-ful, that a change of neighborhood in the direction of business, outside the residence park, would give business the right to invade the borders of the park. See discussion in analogous situation as to apartment houses, in *Dollard* v. *Whowell, supra.*

The property on the west side of North avenue opposite the entrance to Rochelle Heights and on the east side of that avenue at points north and south of the entrance, was unrestricted property when the restrictions upon the Rochelle Heights property were placed there in 1905. Before that time trolley lines extended through North avenue and Fifth avenue, on the west and north boundaries respectively of Rochelle Heights; prior to that time also North avenue had been widened and as early as 1899, North avenue near Fifth avenue had been devoted to a certain extent at least, to business; there was an oyster store at the northeast corner of North and Fifth avenues; a blacksmith shop on the west side of North avenue just opposite to the entrance of the park, and next to that a grocery store; and between Horton and Winthrop avenues other business activities were present, including another grocery, a saloon, a thread and needle store, and a butcher shop. The growth of New Rochelle, the coming of additional railroads and other con-ditions have undoubtedly had a tendency to increase, and have actually increased the business developments which were com-paratively primitive and scattered prior to 1905; but that involves no real change of the unrestrictive neighborhood, since at the time when the restrictions were imposed upon Rochelle Heights, the outside neighborhood, as far as North avenue and Fifth avenue are concerned, was devoted to business, as it is now to a greatly increased extent. This would appear to be no reason for refusing to enforce the covenant against the defendant's lot, which is on the westerly and northerly confines of the restricted development, and borders upon the unrestricted business portions of North avenue and Fifth avenue. The general character of the neighborhood has not changed; and there has been no change whatever in the strictly residential character of the park itself.

The aggravating circumstances, if it may be termed that, pre-sented by the increase of business outside of the confines of the park, present a situation very like that discussed by Mr. Cardozo, referee, in the case of *Equitable Life Assur. Soc.* v. *Brennan*, 30 Abb. N. C. 260, 273, in which he says, referring to the restric-tion in that case which related to Fourth avenue in New York, where the railroads, at the time of the imposition of the restrictions, ran their trains: " The covenant was made in 1882. At that time Fourth avenue was used and occupied as a railroad avenue by the

New York Central and other roads. The only change that appears from the evidence is an increase in the number of trains which pass through the avenue, and which are switched near the defendant's land, but it cannot be held that these facts constitute such a change in the use as, under the decisions in *Trustees of Columbia College* v. *Lynch*, 70 N. Y. 440, and *Trustees of Columbia College* v. *Thacher*, 87 N. Y. 311, should prevent equity from enforcing the covenant in question. They are simply an aggravation of the use which was contemplated by the parties, and in view of the limited character of the covenant, no injustice can be done in requiring the defendant to live up to its terms."

In the case at bar the covenant is unlimited, but the general proposition as to there being no real change in the character of the surrounding neighborhood is the same. The territory in the instant case, now so largely occupied by business, and the general conditions of the neighborhood were substantially the same in 1905 as they are today, except for the admitted increase of business activities.

Another legal proposition which in some of the cases seems to be prominent where injunctive relief has been refused, is that an injunction which bears heavily upon the defendant, without benefiting the plaintiff, will always be withheld as oppressive, and that no injustice is done by refusing an injunction in such a case, because damages can be recovered by the plaintiff in an action at law, where a material change of circumstances so affects the interest of the parties as to make that remedy at law just to both. See *McClure* v. *Leaycraft*, 183 N. Y. 36, 44. In the case at bar I cannot find that the injunction will bear heavily on the defendant, or that it will fail to benefit the individual plaintiffs, who are entitled on the face of the original plan and restrictions, to have all of that residence part devoted, as it was in effect dedicated, to one family dwellings, and not occupied, in any respect, by business. The defendant here, in purchasing the plot in question, protected itself by a suitable agreement with its grantor, for a refund, in effect, of the purchase price in the event that its plan of improvement of the plot was restrained by the courts. The defendant's position, therefore, is not one which appeals to the equitable conscience; knowingly it has entered upon a deliberate plan to violate the restriction, and has protected itself against the possible consequences. Its position in this respect cannot and does not appeal to a court of equity. " In determining whether a court of equity will compel observance of a covenant restricting the use and occupation of land, each case must depend upon the facts which it presents." Cuddeback, J., in *Bachelor* v. *Hinkle*, 210 N. Y. 243, 252.

In the leading case of *Trustees of Columbia College* v. *Thacher*,

*supra,* Danforth, J., writing for the Court of Appeals, said, at page 317: " There is, no doubt, difficulty in embodying these principles in any general rule applicable alike to all cases, but in any given instance a court can more easily determine whether it should interfere, or leave the plaintiff to his remedy at law."

In the case at bar, under all the circumstances, I have determined that the individual plaintiffs are entitled to enforce the covenant in question against the defendant by injunction; I cannot see that the Rochelle Heights Association, which has taken a conveyance of the fee of the streets in the park, and certain " reserve strips," which must also be subject to the easement of the property owners to use the same as roadways and otherwise, has any standing to sue or is injured in any way by the threatened act of the defendant. Therefore, as to that corporation plaintiff the complaint will be dismissed, but without costs.  I have not overlooked the point impressively raised by the defendant's counsel, that the specific performance of the covenant is discretionary with a court of equity (*Winne* v. *Winne*, 166 N. Y. 263), that specific performance is not a strict legal right and is never granted where it would be inequitable.  *Lynch* v. *Buckley*, 82 App. Div. 614.  I am also mindful of the equally well-settled proposition that where the facts clearly give the equitable right to specific performance it cannot be arbitrarily withheld.  *Frain* v. *Klein*, 18 App. Div. 64; *Bowen* v. *Irish Presbyterian Congregation of the City of New York*, 19 N. Y. Super. Ct. (6 Bosw.) 245.

My conclusion as to the individual plaintiffs in their relation to the defendant, has the support of authority in a case in which the principles involved appear to be the same.  *Dollard* v. *Whowell*, 174 App. Div. 403.  The case cited was one in which the covenant creating the restricted residential area, provided for " a detached dwelling house constructed for one family only."  The defendant there intended to erect a twenty family apartment house.  It was argued, as it was argued here, in relation to lots remote from the defendant's property, that while the restrictions might at the time of that law suit still fit the lots in the midst of the restricted area, those on Ocean avenue, where on both sides large apartment houses were becoming more frequent, should be relieved from the covenant, so that the comparatively short frontage on the west side of that avenue, acquired by the defendant in that case, might to advantage now yield its private residence character and be given up to more profitable apartment buildings.  The Appellate Division, second department, per Putnam, J., in relation to this suggestion says: " However, this would treat independently one portion of such a common building scheme, and fail to regard the mutual

benefits from such a common general restriction for the greater privacy of the neighborhood. As was well said by Justice Kelby, the court cannot thus decree a radical change in one side of this restricted area, ' to the clear damage of the residents who have kept the faith of this covenant implicitly.' "

The individual plaintiffs here have kept the covenant implicitly; they are entitled, in my opinion, under all the circumstances of this case, to enforce the covenant in equity against the defendant. Whatever doubt I may have entertained while I studied the case, since it was submitted to me upon the briefs of both sides of the controversy, resulted, I think, more from the ingenuity and learning of defendant's counsel displayed in their masterly arguments, than from the real law of this state applied to the facts.

The case is of such importance, not only to these litigants but to the public in general, that I trust my conclusion in the matter will receive the early attention of the reviewing authority constituted by law; the question involved affects every property owner in every restricted residence park around which the activities of business in growing communities have increased.

Judgment is directed in favor of the individual plaintiffs against the defendant for the relief demanded in the complaint, with one bill of taxable costs and disbursements to the individual plaintiffs; as to the plaintiff Rochelle Heights Association, the complaint is dismissed upon the merits without costs. Settle decision and judgment on notice; at the same time the defendant will kindly present proposed requests to find in accordance with its contentions, and I will pass upon the same.

Judgment accordingly.