MATTIE A. GETCHAL, Plaintiff, v. ARTHUR W. LAWRENCE and DUDLEY B. LAWRENCE, Defendants.

MATTIE A. GETCHAL, Plaintiff, v. LAWRENCE PARK REALTY COMPANY and ELLIOTT BATES, Defendants.

Supreme Court, Westchester Special Term, August, 1923.

**Real property — injunctions — restrictive covenants — change in character of neighborhood — restrictions not enforcible in equity**

A map of a certain acreage plotted into four hundred and forty-three lots including those owned by the plaintiff and the individual defendants in the first above-entitled action and also the plot owned by the corporation defendant in the second above-entitled action was filed by the original owners of the whole tract and all of the lots were conveyed subject to general restrictions running with the land, clearly intended to limit the development to residential purposes except that the words " and no building for business purposes shall be erected upon the said premises " were excluded from the restrictions in each of thirty-four of said lots, although the other portions of the general restriction were imposed upon them, and so far as appeared no objection has ever been made to the carrying on of business on any of said thirty-four lots so far as business has been conducted on any of them, except one, by any of the subsequent owners of the lots indicated upon the map. *Held*, that the general scheme of the original owners to improve and develop the land in the main for residential purposes, was not, as matter of law, impaired or vitiated by the circumstance that a

number of the deeds of conveyance made by said original owners contained no restrictions against business.

While the general scheme evidenced by the large number of conveyances subject to the general restriction gave to the subsequent owners of lots in the development negative easements in the other lots including, to a certain degree, those conveyed without restrictions against business, it also gave to them a *prima facie* right to enforce the general restrictions in equity against the owner of a restricted lot who violated such restrictions by erecting or threatening to erect a prohibited form of building on his lot. *Held*, that it was clear that the owner of a lot conveyed without restrictions as to business could not be enjoined from erecting a business building thereon, if said owner complied otherwise with the general restrictions, unless in a given instance, by reason of a change in the neighborhood, they had lost their quality of equitable enforcement.

The evidence considered and held not only to warrant but to compel a finding that there has been such a change in the neighborhood of the plots involved in both actions as makes it inequitable to grant an injunction and the conclusion reached that specific performance of the restrictive covenants cannot be decreed; therefore, in both actions the plaintiff will be relegated to an action for damages to enforce her rights because of the alleged violation of the restrictive covenants covering the plots.

*Todd* v. *North Avenue Holding Corp.*, 121 Misc. Rep. 301, distingushed.

The complaint in each action dismissed upon the merits but without costs and the judgment in each instance will provide that it is only intended to be effectual as to the plot involved in the given action and neither intimate nor give any right *per se* to erect a business building or one otherwise violative of restrictions, on any other lot within the whole original tract.

SUIT for an injunction.

*J. Henry Esser*, for plaintiff.

*Frederick J. Moses*, for defendant. ·

TAYLOR, GEO. H., J. In 1894 Louis Smadbeck and Charles Lezinsky owned certain acreage, which in its developed and improved state now constitutes Bronx Manor in the village of Bronxville; it included what are now the plots owned by the plaintiff and the individual defendants respectively involved in the action first above entitled, and also the plot owned by the defendant Lawrence Park Realty Company involved in the action second above entitled. Smadbeck and Lezinsky filed on November 23, 1894, a map entitled " 1st Map of Bronx Manor, at Bronxville on the Harlem Railroad adjoining Mt. Vernon, Westchester County, New York." From this map, and according to it, there were made by these original owners sales of the property to various persons as shown in plaintiff's Exhibit 5, to the total number of 443 lots on the map; with the exception of about 34 of these lots which were conveyed without restrictions as to business, they were all conveyed subject to restrictions running with the land, reading as follows:

" It is understood and agreed, between the parties hereto, and

Misc. 359| Supreme Court, August, 1923.

this conveyance is made upon the express condition, that no house or dwelling less than two and one-half stories in height or costing less than Twenty-five Hundred Dollars, or of the style known as ' flat-roof,' shall be erected upon said premises, and that no building for business purposes shall be erected upon the said premises; that no building shall be erected within twenty feet of the street line, and that no barn, stable or other outbuilding shall be erected upon said premises within sixty feet of the line of the street or avenue on which the said premises front, on within twenty feet of any side street; and that there shall not be erected on said premises any slaughter house, smith shop, forge, furnace, steam engine, brass foundry, nail, iron or other foundry, or any manufactory of gunpowder, glue, varnish, vitriol, ink, turpentine, or for the tanning, dressing or preparing skins, hides or leather, or any manufactory whatever, or any ale house, brewery, distillery, saloon, liquor store, hotel or inn, livery stable, or any structure for carrying on any other obnoxious, dangerous or offensive business or trade, or any building of the character or description known as a tenement house; and that all toilet outhouses shall be suitably screened from observation. And that no part of said premises shall be used as or for any hospital, insane, inebriate or other asylum, public or private, or cemetery or place of burial.

" And said parties of the second part, by acceptance of this deed, hereby covenant for themselves, their heirs, executors, administrators and assigns, that they will well and faithfully keep and perform the above conditions and agreements, and that said covenants, conditions and agreements in this deed contained shall run with the land and shall be enforceable both as covenants and conditions with the right of re-entry in case of breach thereof, and that it shall be lawful not only for the above grantors, or either of them, but also for the owners of any lots in the neighborhood of the premises hereby conveyed, deriving title through said grantors, to institute proceedings at law or in equity against any person violating or threatening to violate the same."

The thirty-four lots in question were subject to the above-mentioned restrictions except that the words " and that no building for business purposes shall be erected upon the said premises " were excluded from the restriction in each of those thirty-four cases; in other words, as to those lots there was no exclusion of a building for business purposes, although the other portions of the general restriction were imposed upon them.

It is clear from these restrictions that it was originally intended to limit the development to residential purposes, except that as to the thirty-four lots in question business was to be allowed. As

far as appears, no objection has ever been made to the carrying on of business on any of these thirty-four lots, in so far as business has been conducted on any of them (except lot 314), by any of the subsequent owners of lots upon the map.

From the evidence it is clear to me, and I find, that the said original owners, who filed the map, had a general scheme to improve and develop the land in the main for residential purposes; that it was also their plan and purpose, as indicated in the conveyances not containing restrictions as to business, to allow business to exist in certain portions of this otherwise residence development; the map was filed in accordance with this general plan or scheme, which, as a matter of law, was not, in my opinion, in any respect impaired or vitiated as to its general residential purpose by the circumstance that a number of the deeds made by the said original owners, who filed the map, contained no restrictions against business. See *Beach* v. *Jenkins,* 174 App. Div. 813, 821, in which the Appellate Division said: " It will be remembered that there are about two hundred and fifty lots in all, and it cannot be successfully contended that because the conveyances of twenty of these lots contained no restrictions, there was no general scheme for that purpose."

There can be no doubt that the situation presented by the record as to the general plan and scheme of the developers, evidenced by the large number of conveyances subject to restrictions, gave to subsequent owners of lots in the development what are known as negative easements in the other lots in the tract (including, to a certain degree, those conveyed without restrictions against business); and gave such owners, at least *prima facie,* the right to enforce the restrictions in equity against the owner of a restricted lot, who violated the same by erecting, or threatening to erect, a prohibited form of building thereon (*Booth* v. *Knipe,* 225 N. Y. 390; *Thompson* v. *Diller,* 161 App. Div. 98; *Dollard* v. *Whowell,* 174 id. 403; *Holt* v. *Fleischman,* 75 id. 593, and cases cited); but it is equally clear that the holder of the title to one of the lots conveyed without restrictions as to business, could not be restrained by the court from erecting a business building thereon, if it complied otherwise with the restrictions, unless such restrictions in the given instance had lost their quality of equitable enforcement by reason of a change in the neighborhood.

The plaintiff owns lots Nos. 20 and 21 on the south side of Front street, which were conveyed subject to the general restrictions; the plot is improved generally in accordance therewith; plaintiff's dwelling and home is there; plaintiff's residence violated the setback part of the restriction, but the parties have stipulated, in

effect, that such violation shall not impair her right to maintain these actions, if otherwise she is entitled to maintain them.

The defendant Lawrence Park Realty Company, in the action second above entitled, owns lot 314 on the map, at the northwest corner of Palmer avenue and Front street, which lot was conveyed by Smadbeck and Lezinsky without restrictions against business, although otherwise restricted in conformity with the general restriction provision. Before the commencement of this action the defendant Lawrence Park Realty Company, in the action second above entitled, concededly constructed a small business building on lot 314, which *prima facie* violated the restrictions in that it was less than two and one-half stories in height, cost less than $2,500 and was erected less than twenty feet from each street front; it was used, and is now being used exclusively for business purposes, being occupied by the defendant Bates as a real estate office.

The individual defendants, in the action first above entitled, own a plot consisting of lots 13, 14, 15, 16 and A (referred to as lots 13, 14 and part of lot A in the complaint) on the map, which plot runs from Front street south to the railroad, and now fronts on a park or plaza surrounding the Bronxville south-bound station of the New York Central and Hudson River railroad (formerly of the Harlem railroad), the park occupying the lots lying east of the easterly line of lot 13, running to the westerly line of Palmer avenue, as shown on the map, and lying between Front street on the west and the railroad right of way on the east. The said plot is subject to the general restrictions above adverted to (see plaintiff's Exhibit 5); on the face of the restrictions, therefore, a business building thereon is prohibited; and in the absence of some intervening circumstances, such as were presented and discussed in the so-called *Columbia College* case (*Trustees of Columbia College* v. *Thacher,* 87 N. Y. 311) and in those other cases (*inter alia* *McClure* v. *Leaycraft,* 183 N. Y. 36; *Deeves* v. *Constable,* 87 App. Div. 352; *Batchelor* v. *Hinkle,* 210 N. Y. 243; *Roth* v. *Jung,* 79 App. Div. 1) which have followed the *Columbia College* case in principle, it is clear that such restrictions are enforcible in equity by the plaintiff, the owner of a neighboring lot which is affected by the same restrictive plan or scheme (*Booth* v. *Knipe, supra; Thompson* v. *Diller, supra; Dollard* v. *Whowell, supra; Holt* v. *Fleischman, supra,* and cases cited therein), if the plaintiff has not been guilty of some inequitable conduct which would preclude her, in equity, from enforcing the restriction; as to this there is no evidence of any laches or acquiescence on the part of the plaintiff as to the defendants' buildings, nor has she violated the restrictions herself,

except as to the setback which, under the stipulation between the parties, is of no moment here. See *Thompson* v. *Diller, supra; Alvord* v. *Fletcher,* 28 App. Div. 493.

Therefore, the individual defendants must be restrained at the instance of the plaintiff unless they have sustained the burden which they have assumed, of proving that there has been such a change in the neighborhood that it would be inequitable to enforce the restrictions against business and otherwise affecting said lots (*Trustees of Columbia College* v. *Thacher,* and kindred cases *supra*); this same proposition applies in the case of the small real estate building on lot No. 314 on the map, involved in the action second above entitled.

I find that it was part of the scheme of Smadbeck and Lezinsky, acquiesced in by subsequent owners of lots in the tract, to leave lot 314 and the other thirty-three lots which were conveyed by them not expressly restricted against business, open and available for business; therefore, the defendant Lawrence Park Realty Company is within its rights in maintaining a business building upon lot 314; the particular building, however, does not comply with the other restrictions, which affect business buildings and residences alike, as to cost, size and setback. Therefore, as the building in question was placed on lot 314 in what I find to be deliberate violation of the restrictions as to size of building, cost and setback, the corporate defendant should be directed to remove the building (*Stowers* v. *Gilbert,* 156 N. Y. 600; *Pellegrino* v. *MacKenzie Street Const. Corp.,* 120 Misc. Rep. 89, 92, and cases cited) unless the change in the neighborhood has deprived the restrictions violated of their enforcibility in equity.

In my opinion the evidence warrants, and indeed compels, a finding that there has been such a change in the neighborhood of the plots involved in both actions as makes it inequitable to grant relief by way of injunction, and the conclusion that, in accordance with the principle enunciated in the landmark *Columbia College* case, specific performance of the covenants cannot properly here be granted by a court of equity.

When the restrictions were imposed in 1894, what is now the village of Bronxville was not a village; it was a country hamlet containing a few frame houses; its roads were not paved and there were no sewers, lights or modern improvements; the railroad station, then on Pondfield road on the east side of the tracks of the New York and Harlem railroad, consisted of an old frame building on what is now the site of the Arcade Block on the north side of the present village square; Pondfield road was then an unimproved country road; it crossed the railroad tracks at grade. Bronx

Manor then consisted of open fields and woodland and none of the buildings now surrounding the present village square was then in existence. The land, now part of the village square east of the tracks, was vacant except for a freight switch; on the site of the present village hall was a blacksmith shop; west of the railroad tracks near Pondfield road the only buildings were the Alger house north of that road, and an old frame house where the Lawrence Hospital is now located; there was no street or road upon the present location of Kraft avenue, east of the railroad tracks and south of the village square. In 1898 a new railroad station was erected in the village square east of the tracks; in 1899 the Arcade Block, the present building, was erected. In 1897 the original Gramatan Inn was erected; it was destroyed by fire in 1899; the present Hotel Gramatan on the same site was built in 1905; the village hall was built in 1906. The Studio Arcade, another store and apartment building were built in 1908 on the north side of Pondfield road and what is now the village square west of the tracks. In 1912 the Gramatan National Bank building was built on the south side of the village square and east of the tracks. Lawrence Hospital was built and opened in 1908, west of the tracks and opposite the village square, on a street which is Front avenue as extended north of Palmer avenue. From 1894 to 1916 Front avenue extended north only as far as Palmer avenue. Until 1916 none of the land west of the tracks was included within the village square, but in that year the grade crossing on Pondfield road was eliminated, that road closed where it crossed the railroad tracks, a depression cut through the middle of the village square beneath the tracks, and the land of the Lawrence Hospital east of the westerly line of Front avenue extended north was taken and included in the village square and Front avenue extended north to Pondfield road. At the same time all of the Bronx Manor tract east of Front avenue and north of lots 13 and A, and lying between Front avenue and the railroad track, was acquired by the village of the railroad company, and included in the village square, the present south-bound Bronxville railroad station being erected on a portion of said land. In 1923 Milburn street was extended east from Front avenue to the right of way of the railroad company, and in front of the building involved in the action first above entitled. Since 1912, on Palmer avenue between Front avenue and Paxton avenue, a row of six different buildings of varying heights and sizes has been erected at different times, which buildings are approximately on the street line; all of these six buildings are used for business purposes; some of them are on lots restricted against business. At the southwest corner of Paxton avenue and Palmer

avenue there is a large public garage with stores in front on Paxton avenue and apartments above the stores. On Paxton avenue, from Milburn street to Stone place, is a series of one-story buildings, including a large garage and repair shop, and on Stone place, the next block south of Milburn street, there is a sawmill and lumber yard, which have been in operation for several years, and on Milburn street, between Front avenue and Paxton avenue, is a series of one and two-story buildings occupied for business purposes as garages, repair shops and including a plumbing shop. In or about the year 1919, on the easterly side of Front avenue, a short distance south of the plaintiff's residence, a large four-story apartment house, containing eight apartments, was erected. On one plot on Front avenue there is a row of garages, some of which are rented; a litigation is pending to prevent their use as such. Front avenue, now known as Parkway drive, has become a well-traveled highway; it connects on the south with the Bronx River Parkway.

The facts detailed above and others which might be detailed from the evidence, may be summarized by a statement that within and without the originally restricted area of Bronx Manor, there has been a change in the neighborhood of the plots involved in both actions, which change has been effected in large part by the invasion of business even upon the restricted area, all with the apparent acquiescence of the other lot owners in the tract. There has been created, in my opinion, exactly that situation which has been referred to and fully discussed in the *Columbia College* case and the subsequent cases which follow it in principle. *Trustees of Columbia College* v. *Thacher, supra; McClure* v. *Leaycraft, supra; Deeves* v. *Constable, supra; Batchelor* v. *Hinkle, supra; Roth* v. *Jung, supra.* The neighborhood has so changed that it would make it inequitable to enforce the covenant against business specifically.

My conclusion, therefore, in both actions, is that the plaintiff should be relegated to an action for damages to enforce her rights by reason of the violation of the restrictions covering the plots.

Nothing which I have said in this opinion must be construed as giving or intimating rights to place business buildings or constructions otherwise violative of the restrictions, upon any other lots than lot 314 and lots 13, 14, 15 and 16 and A on the map, because it is well settled that " In determining whether a court of equity will compel observance of a covenant restricting the use and occupation of land, each case must depend upon the facts which it presents." Cuddeback, J., in *Bachelor* v. *Hinkle, supra,* at p. 252. And as was said by Danforth, J., in the leading case of *Trustees of Columbia College* v. *Thacher, supra,* at p. 317: " There

is, no doubt, difficulty in embodying these principles in any general rule applicable alike to all cases, but in any given instance a court can more easily determine whether it should interfere, or leave the plaintiff to his remedy at law."

I have studied these cases with the aid of the scholarly briefs submitted, in connection with my opinion in the case of *Todd* v. *North Avenue Holding Corporation*, 121 Misc. Rep. 301, involving restricted property on North avenue on the westerly edge of Rochelle Heights in New Rochelle; opposite to which property and to the north and south thereof, business had increased upon unrestricted property, although it has not invaded Rochelle Heights. I there determined that the fact of increase of business development outside of the restricted area could not affect the right of owners within the restricted area to have specific performance of the restrictions against business. *Dollard* v. *Whowell, supra.*

The instant cases, in my opinion, differ in their facts from the *Todd* case, in that there has been a change in the neighborhood, brought about not only by increase of business outside the restricted area, but also by the invasion of business in the restricted area, and the disregard, with the acquiescence of all lot owners in the restricted area, of the violations of the covenant against business, notably in the two blocks bounded generally by Paxton avenue, Palmer avenue, Front street, Milburn street and Stone place on the map.

In each action above entitled the complaint will be dismissed upon the merits, but without costs; the judgment in each instance will contain provisions to the effect that it is only intended to be effectual as to the plot involved in the given action, and does not intimate or give any right *per se* to erect a business building or one otherwise violative of restrictions, on any other lot in Bronx Manor. In both actions above entitled I have passed upon requests to find of the defendants; defendants' counsel will kindly present a decision in conformity herewith and with my disposition of the defendants' requests to find; plaintiff's counsel will kindly present plaintiff's requests to find, which I will pass upon. Settle decision on notice. Plaintiff is given sixty days in each action to make a case.

Judgment accordingly.