THE TRUSTEES OF COLUMBIA COLLEGE, in the City of New York, Respondent, *v.* THOMAS THACHER, Impleaded, etc., Appellant.

While a court of equity has jurisdiction to enforce the observance of covenants made by an owner of lands in a city with an adjoining owner, in consideration of similar reciprocal covenants on the part of the latter, restricting the use of the lands to the purposes of private residences, the exercise of this authority is within its discretion ; and where there has been such a change in the character of the neighborhood as to defeat the object and purposes of the agreement, and to render it inequitable to deprive such owner of the privilege of conforming his property to that character, such relief will not be granted.

B., who was the owner of lands at the corner of Fiftieth street and Sixth avenue, in the city of New York, entered into a contract with plaintiff, the owner of adjoining lands on Fiftieth street, wherein, as stated, " to provide for the better improvement of the said lands, and to secure their permanent value," the parties mutually covenanted for themselves, their heirs and assigns, that only dwelling-houses should be erected upon their respective premises, and that neither would permit or carry on "any stable, school-house, engine-house, tenement or community house, or any kind of manufactory, trade or business," on any part of said lands, after the commencement of this action to enforce the performance of the covenant by the successors in title to B., and after a decision therein sustaining the validity of the covenants. (70 N. Y. 440.) T. purchased, with notice, and was brought in as a party defendant. *Held,* that the binding obligation of the covenants could not be questioned by him.

The complaint alleged that a portion of the building on defendant's premises was occupied in part by "a real estate and insurance agent or broker," and in part by "sign or fresco painters." The court found that, at the time of the trial, T. permitted the building to be used by his tenants for the business of a tailor, milliner, insurance agent, express carriers and tobacconist. *Held,* that the vocations specified in the complaint were within the prohibitions of the covenant ; also that in such an action the relief given must depend upon the condition of things at the time of the trial, and that the several occupations found by the court were violations, not only of the spirit, but of the letter of the covenant.

It appeared that the general current of business had reached and passed the premises fronting on Sixth avenue, and that during the pendency of the action, an elevated railroad was built on Sixth avenue, with a station at the intersection of Fiftieth street, in front of the premises in question, which the court found, "affect the premises injuriously, and render them less profitable for the purpose of a dwelling-house, but do not render their use for business purposes indispensable." The evidence disclosed that the station covered a portion of the street, its platform occupied half the width of the sidewalk in front of defendant's premises, and from it persons could look directly into the windows, and that this, with the noise of the trains, rendered privacy and quiet impossible; so that large depreciations in rents and frequent vacancies followed the construction of said road. *Held,* that a contingency having happened not within the contemplation of the parties, which imposed upon the property a condition frustrating the scheme devised by them, and defeating the object of the covenant, so far at least as defendant T. was concerned, thus rendering its enforcement oppressive and inequitable, a court of equity would not decree such enforcement.

(Argued November 23, 1881; decided January 17, 1882.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made June, 1880, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term.

The action was brought to enforce the observance of certain covenants in an agreement made on the 25th of July, 1859, between the plaintiffs and Joseph D. Beers, who then owned adjacent portions of the block of land between Fifth and Sixth avenues and Fiftieth and Fifty-first streets, New York, in respect to the mode of improvement and the future occupation of their respective portions.

The case upon a former appeal is reported in 70 N. Y. 440. Beers owned the portion of the block on the westerly or Sixth avenue side, and the plaintiffs the land adjoining on the east. The property was then vacant. The general object of the agreement as stated therein, was "to provide for the better improvement of the said lands, and to secure their permanent value," which was to be accomplished by the erection, by both parties, of dwelling-houses of a superior class, which were to be

set back eight feet, and to be used exclusively as dwelling houses, the covenant of Beers for himself, his heirs and assigns being not to erect, establish or carry on "in any manner, on any part of the said lands, any stable, school-house, engine-house, tenement or community house, or any kind of manufactory, trade or business whatsoever, or erect or build, or commence to erect or build, any building or edifice with intent to use the same, or any part thereof, for any of the purposes aforesaid." The covenant of the plaintiffs was, that they would insert similar restrictions in all leases executed by them. The defendant Lynch acquired title to the lot on the corner of Fiftieth street and Sixth avenue by sundry *mesne* conveyances from Beers, each of which expressed that it was made subject to this agreement. She erected a four-story brown-stone front dwelling-house upon the premises, of the full width thereof, fronting on and entered by a high stoop from Fiftieth street; having, in the basement story in front, by the side of the stoop, and on the side opening on Sixth avenue, French windows, two of which, on Sixth avenue, and one on Fiftieth street, were used as entrance doors to the basement and offices hereinafter mentioned. At the time of the commencement of this action, defendant Yates occupied a portion of the basement as a dwelling for himself and family, having in one room thereof a real estate office, and using it for that business, with a business sign; and the defendant Blaisdell occupied a room in said office for receiving orders for painting, having also a business sign. During the pendency of this action the defendant Thacher became the owner of the said premises, having purchased the same with notice of said agreement and of this action, and he was made a defendant herein by an order of the court, upon his own application. The court found that said "Thacher permits certain parts of the house upon said premises to be occupied by his tenants for the purpose of trade and business; that is to say, apartments in the first story of said house for the business of a tailor and for that of a milliner, and apartments in the basement of the said house for the business of an insurance agent, of a newspaper dealer, of two express carriers, and of a

tobacconist, which trades or businesses were carried on in the said house at the time of the trial. That the several trades or businesses carried on as aforesaid by the defendants Yates and Blaisdell, at the time of the commencement of the action, and by the tenants of the defendant Thacher at the time of the trial, were violations of the agreement above set forth, and of the spirit as well as the letter thereof. That since the action was begun an elevated railway has been built in the Sixth avenue, running by the said premises, and a station thereof established at the intersection of Fiftieth street and the Sixth avenue, in front of said premises, and that the said railway and station affect the said premises injuriously, and render them less profitable for the purpose of a dwelling-house, but do not render their use for business purposes indispensable to their practicable and profitable use and occupation. The said railway and station, however, do not injuriously affect all the property fronting on Fiftieth street and included in the said covenant, but only a comparatively small part thereof."

Further facts appear in the opinion.

*A. J. Dittenhoefer* for appellant. A covenant should not be enforced when a change of circumstances renders it inequitable to do so. (39 Sup. Ct. 372; Story's Eq. Jur., §§ 750–750 *a*, 769; *Peters* v. *Delaplaine*, 49 N. Y. 366, 367; *Mech's. Bk. of Alexandria* v. *Lynn*, 1 Pet. 376; *King* v. *Hamilton*, 4 id. 311; *Taylor* v. *Longworth*, 14 id. 172.) An application to enforce specific performance must always be directed to the sound discretion of the court, and it will be refused or granted as the equities of the case require. (*Peters* v. *Delaplaine*, 49 N. Y. 367–373; *Sherman* v. *Wright*, id. 227; *Iglehart* v. *Vail*, 73 Ill. 63; *Thurston* v. *Arnold*, 43 Iowa, 43; *Sweeny* v. *O'Hara*, id. 34; *Quinn* v. *Roth*, 37 Conn. 16; *McComas* v. *Easly*, 21 Gratt. [Va.] 23; *Hale* v. *Wilkinson*, id. 75; *Pennuner* v. *Kippler*, 26 N. J. Eq. 481; *Fish* v. *Lesser*, 69 Ill. 394.) The covenant should not, in any event, be enforced as against the Sixth avenue front of the house. (76 N. Y. 447.) The covenant being in the nature of a grant, and the consideration

originally supporting it, to-wit, the equitable right of the cove-
nantee to prevent, by the restriction in question, injury to the
adjacent property, no longer existing, should not be enforced.
(*Trustees of Columbia College* v. *Lynch*, 70 N. Y. 441, 453.)
It is the defendant's right to learn from the complaint what he
is sued for, and to insist that that shall state what he is called
upon to answer, and he cannot be deprived of his objection to a
recovery if the plaintiff fail to establish a cause of action from
the facts alleged. (*Southwick* v. *The First Nat. Bk. of Mem-
phis*, Ct. of App., March 9, 1881.)

*S. P. Nash* for respondents. The question of damages is
wholly immaterial; the parties had the right to determine for
themselves in what way and for what purpose their lands
should be occupied, irrespective of pecuniary gain or loss, or the
effect on the market value of the lots. (70 N. Y. 453.)
Although the business carried on upon the premises is com-
paratively unobjectionable, this does not affect the right
of the plaintiffs to relief, nor is that right dependent upon the
amount of the plaintiffs' damages. (*Stewart* v. *Winters*, 1
Sandf. Ch. 587.)

DANFORTH, J. The validity and binding obligation of the
covenant cannot be questioned by the defendant Thacher.
(*Trustees of Columbia College* v. *Lynch*, 70 N. Y. 440.)
Moreover it appears that he bought with notice, not only
of the agreement, but of this action. He, therefore, could
not take the property without performing the obligation
attached to it, and must be deemed to have taken it at his own
peril, to the extent of such judgment as might be rendered in
the action. It is claimed in his behalf that the business charged
in the complaint to have been carried on does not come within
the prohibition of the covenant. This question was not raised
upon the former trial, and of course there is nothing in our
decision (70 N. Y., *supra*) to prevent its litigation upon the trial
then ordered, and now under review. The words are very
plain; they include "any kind of manufactory, trade or

business whatsoever," upon the premises.    The complaint shows their occupation in part by " a real estate and insurance broker or agent," and in part by "sign and fresco painters," while the finding of the trial judge — and this is somewhat more important — shows that " the business of a tailor and milliner, of a newspaper agent, express carriers, a tobacconist, as well as that of an insurance agent," were carried on by permission of the defendant at the time of the trial.    It would be a useless waste of time to argue that these vocations — for employment or profit, whether described in the complaint, or found by the court — have no relation to the exclusive use to which the premises were set apart.    In such a suit as this, the relief which the court can give must depend upon the condition of things at the time of the trial.    We have no doubt that the conclusion of the trial judge was right upon the point presented, and agree with him, that these several trades or occupations were violations, not only of the spirit, but also of the letter of the covenant.

Now having before us a covenant binding the defendant, and his breach of it, if there is nothing more, the usual result must follow, viz. : an injunction to keep within the terms of the agreement; for the case would come under the rule laid down in *Tipping* v. *Eckersley* (2 K. & J. 264, 270), thus:    " If the construction of the instrument be .clear, and the breach clear, then it is not a question of damage, but the mere circumstance of a breach ' of covenant affords sufficient ground for the court to interfere by injunction."    Indeed, this has in substance been recognized in the decision before made by us (70 N. Y., *supra*).    It was then, however, suggested, that another trial might disclose objections not before us, and it is now claimed by the appellant, that there has been such an entire change in the character of the neighborhood of the premises, as to defeat the object and purpose of the agreement, and that it would be inequitable to deprive the defendant of the privilege of conforming his property to that character, so that he could use it to his greater advantage, and in no respect to the detriment of the plaintiff.    The agreement

before us recites, that the object which the parties to the cove-
nant had in view was "to provide for the better improvement
of the lands, and to secure their permanent value." It cer-
tainly is not the doctrine of courts of equity, to enforce, by its
peculiar mandate, every contract, in all cases, even where spe-
cific execution is found to be its legal intention and effect. It
gives or withholds such decree according to its discretion, in
view of the circumstances of the case, and the plaintiff's
prayer for relief is not answered, where, under those circum-
stances, the relief he seeks would be inequitable. (*Peters* v.
*Delaplaine*, 49 N. Y. 362; *Margraf* v. *Muir*, 57 id. 155;
*Mathews* v. *Terwilliger*, 3 Barb. 51; *Radcliffe* v. *Warring-
ton*, 12 Vesey, 331.) If for any reason, therefore, not refera-
ble to the defendant, an enforcement of the covenant would
defeat either of the ends contemplated by the parties, a court
of equity might well refuse to interfere, or if in fact the con-
dition of the property by which the premises are surrounded
has been so altered "that the terms and restrictions" of the
covenant are no longer applicable to the existing state of
things. (1 Story's Eq. Jur. [10th ed.], § 750.) And so
though the contract was fair and just when made, the inter-
ference of the court should be denied, if subsequent events
have made performance by the defendant so onerous, that its
enforcement would impose great hardship upon him, and cause
little or no benefit to the plaintiff. (*Willard* v. *Tayloe*, 8
Wall. 557; *Thomson* v. *Harcourt*, case 66, p. 415, vol. 2,
Brown's Parliamentary Reports; *Davis* v. *Hone*, 2 Sch. &
Lef. 340; *Baily* v. *De Crespigny*, L. R., 4 Q. B. 180; *Clarke* v.
*Rochester, Lockport and Niagara Falls Railroad Company*,
18 Barb. 350.)

There is, no doubt, difficulty in embodying these prin-
ciples in any general rule applicable alike to all cases, but in
any given instance a court can more easily determine whether
it should interfere, or leave the plaintiff to his remedy at law.
In *Clarke* v. *The Rochester, Lockport and Niagara Falls
Railroad Company* (*supra*), there was a duty imposed by
statute upon the defendant to construct a farm crossing, and

the plaintiff sued in equity for its performance. He succeeded at Special Term, but the General Term dismissed his complaint so far as it demanded equitable relief, yet allowed it to stand for the assessment of damages. This result was reached, because the expense to the defendant in constructing the crossing " would much exceed the value of it to the plaintiff," and so in the opinion of the court there was not only an absence of proof that the enforcement of the performance of the duty would be equitable, but it was affirmatively proved that it would be inequitable. There, the plaintiff's case was within the statute (Laws of 1850, chap. 140, §§ 50, 49, 44) requiring railroad corporations to erect farm crossings for the use of the proprietors of land adjoining such railroad — and so the court held — but also that a refusal to perform did not, as of course, entitle the plaintiff to the interposition of a court of equity. In *Willard* v. *Tayloe* (*supra*), the court refers to cases where a claim had, in the discretion of the court, been denied, because of some irregularity or unfairness in the terms of the contract, by reason of which injustice would have followed a specific performance, and to others which show that the same discretion is exercised where the contract is fair in its terms, if its enforcement, from subsequent events, or even from collateral circumstances, would work the same result, or even hardship, to either of the parties. In that case, although relief was granted, it was upon reasons which do not concern the one in hand, and it was also said that it was " not sufficient to call forth the equitable interposition of the court, that the legal obligation under the contract to do the specific thing desired may be perfect," but " it must also appear that the specific performance will work no hardship or injustice." In *Thomson* v. *Harcourt* (*supra*), the irregularity of the bargain related exclusively to the time when performance was demanded. In *Baily* v. *De Crespigny* (*supra*), we find a case whose facts come near to those before us. The action was at law for damages for breach of an agreement that neither the defendant nor his assigns would permit any building to be placed upon a certain " paddock " fronting the demised premises. The plea alleged the purchase and a com-

pulsory taking of it by a railroad company for the purposes of their incorporation, and the erection upon it, by them, of the structure complained of as a breach of covenant. Upon demurrer judgment was given for the defendant, upon the ground that the transfer to the company was not by voluntary act of the prior owner, but by compulsion of law, and the court was of opinion that he was discharged from his covenant, on the principle expressed in the maxim, "*lex non cogit ad impossibilia.*"

In the case before us, the plaintiffs rely upon no circumstance of equity, but put their claim to relief upon the covenant and the violation of its conditions by the defendant. They have established, by their complaint and proof, a clear legal cause of action. If damages have been sustained, they must, in any proper action, be allowed. But on the other hand, the defendant has exhibited such change in the condition of the adjacent property, and its character for use, as leaves no ground for equitable interference, if the discretion of the court is to be governed by the principles I have stated, or the cases which those principles have controlled. The general current of business affairs has reached and covered the entire premises fronting on Sixth avenue, both above and below the lot in question. If this was all, however, the plaintiffs would be justified in their claim, for it is apparent from the agreement that such encroachment was anticipated, and that the parties to it intended to secure the property in question from the disturbance which business would necessarily produce. But the trial court has found that since the action was begun, an elevated railway has been built in the Sixth avenue. It runs past the premises, and a station has been established in front of them, at the intersection of Fiftieth street. He finds that "the railway and station affect the premises injuriously and render them less profitable for the purpose of a dwelling-house, but do not render their use for business purposes indispensable to their practicable and profitable use and occupation." The evidence sustains the finding. The premises may still be used for dwellings, but the occupants are not likely to be those

whose convenience and wishes were to be promoted by the covenant, persons of less pecuniary ability, and willing to sacrifice some degree of comfort for economy, transient tenants of still another class, whose presence would be more offensive to quiet and orderly people who might reside in the neighborhood. Not only large depreciation in rents when occupied, but also frequent vacancies have followed the construction of the road. Its trains, propelled by steam, run at intervals of a few minutes, until midnight. The station covers from fifteen to twenty feet of the street opposite the defendant's premises. Half the width of the sidewalk is occupied by its elevated platform. From it, persons waiting for the trains, or there for other purposes, can look directly into the windows. Noise from its trains can be heard from one avenue to the other.

It is obvious, without further detail, that the construction of this road and its management have rendered privacy and quiet in the adjacent buildings impossible, and so affected the premises of the defendant, and all those originally owned by him, who, with the plaintiff, entered into the covenant, that neither their better improvement nor permanent value can be promoted by enforcing its observance. Nor are the causes of this depreciation transient. The platform of the railroad station, which renders inspection of the interior of the house easy to all observers; the stairs, which render the road accessible, must remain so long as the road is operated; and the noise and smoke are now, at least, an apparent necessity, consequent upon its operation. It is true, the covenant is without exception or limitation, but I think this contingency which has happened was not within the contemplation of the parties. The road was authorized by the legislature, and, by reason of it, there has been imposed upon the property a condition of things which frustrates the scheme devised by the parties, and deprives the property of the benefit which might otherwise accrue from its observance. This new condition has already affected, in various ways and degrees, the uses of property in its neighborhood, and property values.

It has made the defendant's property unsuitable for the use to which, by the covenant of his grantor, it was appropriated, and if, in face of its enactment and the contingencies flowing from it, the covenant can stand anywhere, it surely cannot in a court of equity. The land in question furnishes an ill seat for dwelling-houses, and it cannot be supposed that the parties to the covenant would now select it for a residence, or expect others to prefer it for that purpose. And although the land has not itself been taken as in *Baily* v. *DeCrespigny* (*supra*), for actual occupation by the railroad, the railroad has incumbered the walks and streets about it, and taken away those advantages of situation which induced its owners to dedicate it to dwellings instead of stores, and to retirement rather than to the bustle of business. Submission to this is necessary, because it is authorized by the legislature, and so the defendant is made incapable of carrying out, if he should desire it, the wishes of those by whose agreement he would otherwise be bound.

There is, I think, no merit in the respondent's suggestion that the change in the character of the neighborhood is insufficient so long as it does not extend to all the property affected by the agreement. If this assumption is well founded — if the influence of the road is felt only by the portion of land owned by the defendant, it is still apparent that the original design of the parties has been broken up by acts for which neither the defendant nor his grantors are responsible, that the object of the covenant has been, so far as the defendant is concerned, defeated, and that to enforce it would work oppression, and not equity.

To avoid this result the judgment appealed from should be reversed, and the complaint dismissed, but as this result is made necessary by reason of events occurring since the commencement of the action, it should be without costs.

All concur.

Judgment reversed, and complaint dismissed