(No. 19882.

MAGDALENA K. DOLAN *et al.* Appellees, *vs.* ARTHUR T. BROWN, Appellant.

*Opinion filed February 21, 1930.*

EDWARD PREE, and HARLINGTON WOOD, for appellant.

DOYLE, SAMPSON & GIFFIN, for appellees.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Magdalena K. Dolan, Charles Rocchiccioli, Clara B. Wendt, John Richno, Jr., Goldie M. Richno, Martin F. Kelly and Julia G. Kelly, filed an amended bill in the circuit court of Sangamon county against Arthur T. Brown and John Sime to enjoin the erection of a gasoline station on the lot at the southwest corner of Fifth street and South Grand avenue, in the city of Springfield, in violation of a covenant restricting the use of the lot. The defendants answered the amended bill, a replication to the answer was filed, evidence was heard and a decree was rendered permanently enjoining the defendants from using any building erected upon the particular lot for any other than residential purposes save that the defendants would be permitted to apply to the court for a modification of the decree in case future changes in the general character of the subdivision which included the lot, the conduct of the complainants, or any other sufficient reason should render the continuation of the injunction inequitable. From that decree the defendant Brown prosecutes this appeal.

George Carpenter, the owner in fee simple of a part of the east half of the northeast quarter of section 4, township 15 north, range 5 west of the third principal meridian,

situated in Sangamon county, subdivided the land into lots, blocks, streets and alleys, and on July 9, 1880, a plat of the subdivision was filed for record in the recorder's office of the same county. The subdivision is bounded on the north by South Grand avenue, on the east by Fifth street, on the south by Laurel street and on the west by Third street which is occupied longitudinally by the Chicago and Alton railroad. Fourth street runs through the center of the subdivision parallel to Third and Fifth streets. Between South Grand avenue and Laurel street, Pine, Cedar and Spruce streets run east and west through the subdivision in the order named from north to south. There are eight blocks in the subdivision. Blocks 1, 2, 3 and 4, numbered from north to south, lie between Fourth and Fifth streets and blocks 5, 6, 7 and 8, numbered from south to north, lie between Third and Fourth streets. Each of blocks 1, 2, 3 and 4 contains eight lots four of which lie east and four west of a sixteen-foot alley. The lots in each of these blocks are numbered in the same order as the blocks of the subdivision. Blocks 5, 6, 7 and 8 have five lots each, of which lots 1 to 4 inclusive face Fourth street and are numbered from north to south, while lot 5 consists of the west thirty feet of the block and abuts, throughout its length, the east line of Third street. There are, therefore, in the subdivision as originally platted, fifty-two lots. Some of these lots have since been divided into smaller parcels.

The owner, George Carpenter, conveyed the south half of lot 8 in block 1, and this parcel, after *mesne* conveyances, was acquired by Magdalena K. Dolan by a warranty deed dated January 20, 1883. He also conveyed the south half of lot 2, the north twenty feet of lot 3 and the south sixty feet of the north one hundred feet of lot 5, all in block 8, which parcels, sundry conveyances intervening, were acquired by Charles Rocchiccioli by a warranty deed dated December 9, 1919. The north half of lot 8 in block 1 Carpenter conveyed to the city of Springfield by

a warranty deed dated September 26, 1898. The several deeds through and by which these ultimate grantees hold title were recorded.

George Carpenter died intestate on December 16, 1904, seized of practically all of the remaining lots in the subdivision. Subsequently a partition suit was instituted in the circuit court of Sangamon county and pursuant to a decree rendered in that suit, the lots and parts of lots Carpenter owned at the time of his death were sold at a master's sale and, after the approval of the sale, were conveyed to John Carpenter as trustee for certain heirs of the intestate. On July 29, 1907, the trustee filed for record a declaration of trust in which he set forth, among other things, the interests of the various beneficiaries, of whom he was one; the manner of determining the prices at which lots might be sold and the order in which disposition should be made of the proceeds of the sales made by him. The instrument contained no provision respecting the imposition upon the title by the trustee of a covenant restricting the use of lots conveyed. No such restriction had been incorporated in the deeds executed by George Carpenter.

The lots and parts of lots to which the trustee had acquired the title were conveyed by him to various grantees. Each deed which he executed contained the following provision: "A part of the consideration for the conveyance of the above described real estate, and as a covenant and restriction running with said real estate, and binding upon the heirs, devisees, assigns and legal representatives of the grantee and for the benefit of any person or persons who may now or may hereafter hold the title to any one or more lots in said subdivision, the said grantee by accepting this conveyance, covenants and agrees for himself, his heirs, devisees, assigns and legal representatives, that no building, erected upon the above described premises shall be used for business purposes or for other than residence purposes; that all dwellings and structures appurtenant

thereto and all buildings that may be erected upon said premises shall be placed not nearer to the front line of said premises than twenty feet and no dwelling shall be erected on said premises at a cost of less than two thousand five hundred dollars." By warranty deeds, after *mesne* conveyances, appellee Clara B. Wendt, on October 13, 1925, acquired the south half of lot 8 in block 2; appellees John Richno, Jr. and Goldie M. Richno, his wife, as joint tenants, on May 19, 1922, acquired the south half of lot 5 in block 2; appellees Martin F. Kelly and Julia G. Kelly, his wife, as joint tenants, on May 1, 1923, acquired the east one hundred fifty-two feet of the south half of lot 1 in block 6, and the appellant, Arthur T. Brown, on March 30, 1929, acquired lot 1 in block 1. These grantees are still the owners of the respective lots or parcels conveyed to them, and the deeds through and by which they hold title were recorded in the recorder's office of Sangamon county.

The lot owned by the appellant is situated at the southwest corner of Fifth street and South Grand avenue. It has a frontage on Fifth street of eighty feet and its depth along South Grand avenue is one hundred fifty-two feet. Immediately across the latter street to the north of appellant's lot is a gasoline station which was completed in February, 1928. At the northeast corner of Fifth street and South Grand avenue, diagonally across from appellant's lot, is a drug store and proceeding thence eastward are successively a meat market, a grocery, a confectionery, a bakery supply store, a shoe repair shop, a barber shop and an office of the insurance department of the State. Places of business such as drug and grocery stores are also conducted at Sixth street and South Grand avenue, and at Fifth and Laurel streets. There is a gasoline station at the southwest corner of Third street and South Grand avenue; another at the southwest corner of Third and Laurel streets, and a third one at the southeast corner of Fifth and Laurel streets. The southeast corner of Third and Laurel streets

is occupied by a lumber yard. All of the foregoing places of business are outside of the subdivision in which appellant's lot is situated.

The character of the buildings upon lots in the subdivision in question varies. The north half of lot 8 in block 1, which lies directly west of appellant's lot and adjoins appellee Dolan's premises on the north, is improved by a two-story brick building devoted to the use of the fire and police departments of the city of Springfield. A large apartment building faces east on Fifth street just north of Pine street. Twelve other buildings are multiple family dwellings. The remaining buildings in the subdivision, which constitute the majority, are single-family residences. While there are some vacant lots in the subdivision, the north portion of it is thickly populated. It is situated about one mile from the central business district of the city.

The traffic on South Grand avenue is heavy, having doubled in three years and increased nearly sixfold in fifteen years. Within six years the traffic on Fifth street has trebled. The railroad running along the west side of the subdivision is the main line of the Chicago and Alton railroad and many trains are operated over it each day.

The council of the city of Springfield, in July, 1924, passed a zoning ordinance under which the lot now owned by the appellant was classified for commercial uses. Thereafter, on April 7, 1929, a permit to build a gasoline station on the lot was issued to the appellant. Excavation and other work preparatory to the erection of the station at a cost of approxmately $900 had been done by John Sime, the contractor, when notice of the instant suit was served. Appellant testified that he paid $5000 for the lot and that its value would be reduced one-half if its use were restricted to residential purposes. Clara B. Wendt, one of the appellees, expressed the opinion that the station, if built, would damage her property to the extent of two thousand dollars. No other evidence on the subject of damages was offered.

Appellant's first contention for a reversal of the decree is that the trustee had no authority to incorporate in the deeds which he executed to the several grantees, the covenant restricting the use of the lots conveyed. John Carpenter, the trustee, took the legal title in fee simple to the lots conveyed to him by the master's deed. Each of his grantees, by accepting the deed, covenanted and agreed for himself and those who succeeded to the title under him, that no building erected upon the real estate conveyed should "be used for business purposes or for other than residence purposes." By the express terms of each of the trustee's deeds, the covenant constituted a part of the consideration for the conveyance; it ran with the land and was made for the benefit of any person or persons who might at the time of the conveyance or thereafter hold the title to any one or more of the lots in the subdivision. A grantor may lawfully insert in his deed conditions or restrictions which are not against public policy and do not materially impair the beneficial enjoyment of the estate. (*Wakefield* v. *VanTassell*, 202 Ill. 41). The restriction imposed by the trustee did not transgress these limitations. *Wakefield* v. *VanTassell, supra; VanSant* v. *Rose*, 260 Ill. 401.

The absence of the covenant from a deed succeeding the trustee's deed to the same lot is of no consequence. The deeds from the trustee were recorded, the covenant appeared in the chain of title to each lot conveyed by him, and the record gave notice to subsequent purchasers of the existence and binding force of the covenant. Appellant had notice of the covenant and became a party to it by accepting the deed made to him. Upon proper application in such a case, a court of equity will interpose by injunction, thereby indirectly enforcing the performance of a negative covenant by prohibiting its breach. *VanSant* v. *Rose, supra; Hartman* v. *Wells*, 257 Ill. 167.

The appellant further contends that the character of the neighborhood in which his lot is situated has undergone

such a change since the restriction was imposed that a court of equity will be justified in refusing to enforce the covenant. Equity will not, as a rule, enforce a restriction upon the use of property by injunction where the property has so changed in character and environment as to make it unfit or unprofitable for use should the restriction be enforced, but will, in such a case, leave the complainant to whatever remedy he may have at law. (*Ewertsen* v. *Gerstenberg,* 186 Ill. 344; *Downen* v. *Rayburn,* 214 id. 342; *Kneip* v. *Schroeder,* 255 id. 621). By the covenant the use of the property is restricted to residences. The subdivision of which the appellant's lot is a part is still residential in character. No business is conducted within its boundaries. The places of business on the opposite sides of the streets which bound the subdivision are comparatively few in number and, apart from the gasoline stations and the lumber yard, receive practically their whole support from the immediate neighborhood and are such as are found in or near residential districts. The evidence fails to show such a change in the environment of the appellant's lot as would justify a refusal by a court of equity to enforce the restriction.

The zoning ordinance classified the appellant's lot for commercial uses. Upon that classification as the basis, he contends that the enforcement of the ordinance cannot be enjoined, and that a party who feels himself aggrieved by the classification should have taken recourse to the zoning board of appeals of the city. A valid restriction upon the use of real property, incorporated in the deeds by or under which the owners hold title and which in no way threatens or endangers the safety, health, comfort or general welfare of the community, is neither nullified nor superseded by the adoption or enactment of a zoning ordinance. (*Vorenberg* v. *Bunnell,* 153 N. E. (Mass.) 884, 48 A. L. R. 1431; *Ludgate* v. *Somerville,* 121 Ore. 643, 54 A. L. R. 837). The powers of a zoning board of appeals are confined to

the subject of zoning and are conferred by statute. Appellees relied upon the covenant in the deeds by the trustee and for that reason their recourse to a court of equity for relief by injunction without first applying to the zoning board of appeals was justified. *Western Theological Seminary* v. *City of Evanston,* 325 Ill. 511; *Village of Euclid* v. *Ambler Realty Co.* 272 U. S. 365.

The decree of the circuit court is affirmed.

*Decree affirmed.*