[Civil No. 2970.   Filed May 27, 1931.]

[299 Pac. 132.]

CONTINENTAL OIL COMPANY, a Corporation, Appellant, v. H. M. FENNEMORE, AUDRY WERTZ MITCHELL, H. S. PRINCE, JOHN A. JOHNSON, H. H. HOTCHKISS, H. H. BRAXTON and W. J. BURNS, Appellees.

Messrs. Cunningham, Carson & Gibbons, for Appellant.

Mr. J. Early Craig, Mr. H. W. Allen, Mr. V. T. Bledsoe, Mr. Richard Fennemore and Mr. H. M. Fennemore, *in pro. per.*, for Appellees.

FICKETT, Superior Judge.—Appellees, who own their homes in East Evergreen addition, in the city of Phoenix, a restricted subdivision, brought suit against appellant to enjoin the construction of a gasoline service station, which appellant had started to erect on its lot in the addition. After trial, the court issued its injunction, perpetually enjoining and restraining the construction of the proposed service station. From this decree appellant has appealed.

East Evergreen addition is approximately one-half mile in length by one-quarter mile in width, containing 152 lots, bounded on the north by McDowell Road, on the south by East Roosevelt Street, on the east by Seventh Street, and on the west by Third Street. This tract was subdivided in 1909 by Lloyd B. Christy and wife, who were then the owners thereof, and all of the lots in said addition were conveyed by the said Christy and wife by deeds which contained the following restrictions and covenants:

"It is hereby mutually covenanted and understood between the parties hereto that East Evergreen, within which the above described premises are situated and of which they constitute a part, has been

platted and laid out as a choice and attractive residence addition to the City of Phoenix; and to protect all lot owners in the enjoyment of their respective lots therein, it is hereby covenanted on the part of the parties of the second part, their heirs, executors, administrators and assigns, that neither they nor any of them will erect or maintain, or suffer or permit to be erected or maintained on the above described premises, any building or structure other than a dwelling house, hotel, lodging house or boarding house, with the necessary and usual outbuildings, and that no saloon or place for the sale of intoxicating liquors and no hospital, sanitarium, hotel, boarding or lodging house used or occupied as such for the care, lodging and entertainment of persons suffering from disease, and no building used or occupied for any purpose that shall depreciate the value of the neighborhood*ing* property for dwelling house purposes shall ever be maintained, kept or permitted upon said premises or any part thereof.

"Said second parties for themselves, their heirs, executors, administrators and assigns, further covenant and agree that neither they nor any of them shall or will construct, build or maintain on said premises any dwelling house, hotel, boarding or lodging house which shall cost to construct less than Two Thousand ($2000) dollars, and that the front line of such building shall not be erected nearer than thirty-five (35) feet to the front boundary line of said premises, and only one house shall be built on one lot, except that on the corners of Fifth and Seventh Streets where additional buildings may be constructed on rear of lot not nearer than one hundred twenty-five (125) feet from the front line of said premises; that on lots fronting on Third Street, buildings must not be nearer than thirty-five (35) feet to the front or side lines of streets and no stable or outhouse nearer than one hundred (100) feet from front or seventy (70) feet from side lines of street. On all other lots, stables and out-buildings must not be constructed nearer than one hundred and twenty-five (125) feet from the front line and on 5th and 7th Streets corner lots thirty-five (35) feet from the side line of said premises.

"These covenants are understood and agreed to be and shall be taken and held to be for the benefit of all lot owners, be they such now or become such hereafter."

On or about the third day of August, 1929, appellant purchased for $17,500, from one Cooper, lot 9 in block 4 of said addition, which is located on the northwest corner of the intersection of East Roosevelt and Seventh Streets. At the time of the sale there was a dwelling-house on said property in which Cooper had maintained his family residence during all of the time that he had owned the lot, about a year and a half. Appellant purchased with full knowledge of the restrictions hereinabove set forth. Shortly thereafter it removed the dwelling-house, obtained a permit from the city of Phoenix to erect its service station on said corner lot, and commenced construction thereof.

The undisputed evidence shows that the building restrictions have been well observed throughout the addition, and that it is built up with fine and attractive homes and apartment houses far beyond the requirements of the restriction, making it a fine residential district. There are only about twelve vacant lots remaining in the tract.

One defense, relied upon by appellant to prevent the enforcement of the restrictions against it, is that the restrictions in the addition have been violated by various and sundry persons, with the knowledge and acquiescence of appellees, who thereby waived their right to enforce them against appellant.

The only evidence in support of this was that in front of one of the dwelling-houses in the addition, in which appellees were in no way interested, a realtor's sign had been displayed at times. This does not amount in law to a waiver of the restrictions by appellees, and appellant is in no way aided by this slight violation of the restrictions.

In this case it is not shown that appellees would suffer any substantial injury as a result of the erection of the proposed service station. But in cases of this character it is not necessary to prove special damages in order to secure injunctive relief. 32 C. J. 208; *Walker* v. *Haslett et al.*, 44 Cal. App. 394, 186 Pac. 622; *Armstrong* v. *Leverone*, 105 Conn. 464, 136 Atl. 71; *Barnett* v. *Vaughan Institute*, 134 App. Div. 921, 119 N. Y. Supp. 45, affirmed 197 N. Y. 541, 91 N. E. 1109.

It is also well settled that, where a tract of land is divided into building lots, and as a part of a general scheme of improvement restrictions are inserted in all of the deeds governing the purposes for which the land may be used, they may be enforced in equity by any of the grantees against the others. 18 C. J. 394; *Vaughn et al.* v. *Lyon et al.*, 122 Okl. 179, 252 Pac. 1088.

The principal defense interposed by appellant is contained in paragraph VIII of its answer, which is as follows:

"For a further and separate defense, this defendant alleges that its said lot is situated on the Northwest corner of the intersection of Roosevelt Street and Seventh Street; that at the time the said East Evergreen Addition to the city of Phoenix was platted and laid out, more than twenty years ago, said Roosevelt Street and said Seventh Street were residence streets and the entire neighborhood, including said East Evergreen Addition and for several blocks in every direction surrounding it, was a residence neighborhood; that no business of any kind or character was conducted on Roosevelt Street or on Seventh Street within eight blocks of said lot; that at said time said lot was valuable as residence property only.

"That due to the steady growth of the population of the city of Phoenix and the encroachment of business, Roosevelt Street and Seventh Street have become and now are business streets; that said change

has not been due to the breach of restrictions upon East Evergreen lots.

"That at the present time on the southwest corner of the intersection of Roosevelt Street and Seventh Street a gasoline service station is being operated; that on the northeast corner of Roosevelt Street and Seventh Street a community center of shops, or market has been constructed and is now operated; Seventh Street has been widened from Roosevelt south to Van Buren Street and plans have been made and petitions circulated for the widening of Seventh Street from Roosevelt north to McDowell Road and for the widening of Roosevelt Street from Seventh Street to Central Avenue; that on Roosevelt Street between Seventh Street and Central Avenue, a distance of seven blocks, there are now fourteen business establishments; that on Seventh Street there are sixteen business etablishments within nine blocks of the property of this defendant.

"That by reason of the encroachment of business the property of this defendant is valuable chiefly as business property and has lost its value and desirability as exclusive residential property.

"Defendant, therefore, alleges that to deprive defendant of the privilege of erecting a service station upon his lot would work great hardship and damage to defendant and would not be of any benefit to plaintiffs."

The evidence introduced at the trial supports the allegations as to business locations and street widening. The business establishments referred to are in the main, of the general neighborhood type, such as a community market, drug-stores, bakery, grocery-stores, barber-shop, meat market, service stations and the like. There is, however, no business encroachment of any material nature on the property adjoining either the north or the west side of East Evergreen addition.

Van Buren Street is seven blocks south of Roosevelt, and at the corner of Van Buren and Seventh Streets there are several public school buildings, and

in the rest of the entire district, between Van Buren and Roosevelt Streets and Third and Seventh Streets, there are only fourteen lots upon which any business establishments are located, so that it is clearly apparent that this entire district is, in the main, residential in character. On all locations referred to herein and in appellant's answer, where a business has become established, there are no restrictions.

There is no merit in appellant's contention that the restrictions should not be enforced against it because the streets around this addition have been widened and are important arteries of traffic, rendering its property unfit for residential purposes, for, as stated in *Strong* v. *Hancock,* 201 Cal. 530, 258 Pac. 60, at page 68:

"As to the appellant's contention that vehicular traffic and travel other than by railways along or even across Shatto place has rendered undesirable residence therein, he cites no authority to support such a theory. It is a matter of common knowledge that boulevards, avenues, and broad highways best suited for the use of vehicles usually traverse suburban areas devoted to and favored for residential uses. To hold that the several broad boulevards and avenues which lead from Los Angeles to the sea have by their increasing travel destroyed restricted residential uses of property along their route would be contrary to both reason and experience."

The appellant, in presenting its case to the trial court, considered the lot for residential purposes only in its status as vacant property; it contended that as a vacant lot it was of little or no value for residential purposes; and there was some evidence tending to substantiate this claim. However, the conclusion that the lot is of little or no value for residential purposes is not justified by the evidence, for, as stated above, when the appellant bought the lot, there was a substantial dwelling-house upon the same, and it was,

and has been, continuously used for dwelling purposes. This particular house, because of its location, was probably not as valuable for residential purposes as some in the interior of the tract, but it did have value. The dwelling was torn down by the appellant, and the fact that it would not now be good business to erect a new residence on said lot cannot operate to benefit appellant under the facts in this case. This in itself is probably sufficient ground for sustaining the action of the lower court, but we prefer for the purposes of this opinion to accept as true the appellant's contention that its lot is worth $17,500 for business purposes and that it has little or no value for residential purposes.

We agree with the appellant that it is a general rule of law that, where there has been a change in the uses to which property in a neighborhood is being put so that such property is no longer residential property, it would be oppressive and inequitable to give effect to restrictions where the changed condition of the locality has resulted from other causes than their breach. *Miles* v. *Hollingsworth et al.,* 44 Cal. App. 539, 549, 187 Pac. 167; *Trustees of Columbia College* v. *Thacher,* 87 N. Y. 311, 41 Am. Rep. 365; *Jackson* v. *Stevenson,* 156 Mass. 496, 32 Am. St. Rep. 476, 31 N. E. 691.

The important question to be decided in this case is as to what principles are to govern in determining when this general rule is applicable to particular fact situations. Counsel for appellant contend that the facts in this case bring it within the operation of this general rule.

The principle contended for by appellant is set forth in its brief as follows:

"Where a change affects only a portion of the lots of the restricted area and that change is such that the original purpose of the restrictions has been de-

stroyed, then equity should not interfere to enjoin such property owners from adapting their holdings to such uses as will render a profit to them. It follows that if the change in conditions affects but one or two lots of the restricted area and that change is such that the original purposes of the restrictions have been defeated, then the owner can no longer be forced to observe these restrictions to his damage.''

This presents a clear-cut issue. In determining whether or not equity will enjoin the attempted violation of restrictive covenants, should the courts consider only the particular lot or lots on which the proposed structure is to be erected, as contended by appellant, or should consideration be given to the effect upon the entire restricted district of the alleged business encroachments on the adjoining unrestricted areas?

Undoubtedly, when these restrictions were first imposed by Christy and wife, and when the properties were purchased by the respective grantees, and when the fine residences and apartment houses now in the addition were erected, the restrictions were mutually imposed and relied upon by all parties because of the knowledge that businesss would some day attempt to encroach upon the residential area embraced therein.

It is also a matter of common knowledge and accepted human experience that, if the restrictive bars were let down for appellant in this case, the business encroachment on the remainder of the addition would be a matter of gradual yet steady development against which the home owners would be helpless, and the benefits and protection of the restrictive covenants would eventually be lost to all the co-owners therein. This problem arises immediately in connection with the twelve vacant lots scattered through the addition.

The policy of the courts of this state should be to protect the home owners who have purchased lots relying upon, and have maintained and abided by, restrictions, from the invasion of those who attempt to break down these guaranties of home enjoyment under the claim of business necessities.

We adhere to the doctrine that the lot of appellant cannot be considered separate and apart from its relation to the entire restricted addition. Though there may be a fringe of property all around the borders of a restricted addition which would be more valuable for business than for residential purposes, this fact alone is not sufficient to warrant the breach of the restrictions by these owners. As was stated in the case of *Trustees of Columbia College* v. *Thacher, supra,* which is the leading case relied upon by the appellant:

"The general current of business affairs has reached and covered the entire premises fronting on Sixth avenue, both above and below the lot in question. If this was all, however, the plaintiffs would be justified in their claim, for it is apparent from the agreement that such encroachment was anticipated, and that the parties to it intended to secure the property in question from the disturbance which business would necessarily produce."

The rule which we adopt is well stated in *Swan* v. *Mitshkun et al.,* 207 Mich. 70, 173 N. W. 529, wherein the court said:

"Those owning property in a restricted residential district or neighborhood, and especially those who have their homes there and have been led to buy or build in such locality by reason of restrictive covenants running with the land imposed upon the street, block, or subdivision in which they have purchased, are entitled to protection against prohibited invasion *regardless of how close business may crowd around them on unrestricted property,* provided the original plan for a residential district has not been departed

from in the restricted district, street, or block and the restrictive requirements have been generally enforced, or accepted and complied with by purchasers." (Italics ours.)

And also in the case of *Miles* v. *Hollingsworth et al., supra,* as follows:

"The fact that apart from and surrounding the tract some business has grown up, and that the land has become more valuable in consequence, in no manner entitles defendants to be relieved of the restrictions they have created. This condition is but the natural result of the improvement of the various tracts, and the fact that the property may have become more valuable thereby for business purposes is immaterial."

And also in *Bohm* v. *Silberstein,* 220 Mich. 278, 189 N. W. 899, page 901, as follows:

"The fact that adjoining or surrounding property is now used for business purposes does not alter the character of the subdivision itself, and the owners of property therein are entitled to have it preserved for the purpose for which it must be assumed they purchased it."

Practically all the modern authorities support this view. *Strong* v. *Hancock, supra; Sanders* v. *Campbell,* 231 Mich. 592, 204 N. W. 767; *Evans* v. *Foss,* 194 Mass. 513, 11 Ann. Cas. 171, 9 L. R. A. (N. S.) 1039, 80 N. E. 587; *Cuneo* v. *Chicago Title & Trust Co.,* 337 Ill. 589, 169 N. E. 760; *Dolan* v. *Brown,* 338 Ill. 412, 170 N. E. 425; *Todd* v. *North Avenue Holding Corp.,* 121 Misc. Rep. 301, 201 N. Y. Supp. 31, affirmed 208 App. Div. 854, 204 N. Y. Supp. 953; *Frick* v. *Foley,* 102 N. J. Eq. 430, 141 Atl. 172; *Frick* v. *Northern Trust Co. et al.,* (N. J. Err. & App.) 146 Atl. 914; *Hunter* v. *Wood,* 277 Pa. 150, 120 Atl. 781; *Brown* v. *Huber,* 80 Ohio St. 183, 28 L. R. A. (N. S.) 705, 88 N. E. 322; *Spahr* v. *Cape,* 143 Mo. App. 114, 122 S. W. 379; *Pierce* v. *St. Louis Union Trust Co.,* 311 Mo. 262, 278 S. W.

398; *Ludgate* v. *Somerville,* 121 Or. 643, 54 A. L. R. 837, 256 Pac. 1043.

The judgment of the superior court of Maricopa county is affirmed.

ROSS, Acting Chief Justice, and LOCKWOOD, J., concur.

NOTE.—Hon. A. G. McALISTER, Chief Justice, deeming himself disqualified, Hon. FRED W. FICK-ETT, Judge of the Superior Court of Pima County, was called to sit in his place and stead.