**BETHEA et al. v. LOCKHART et al.**

**No. 10501.**

Court of Civil Appeals of Texas.
San Antonio.

April 12, 1939.

Rehearing Denied May 10, 1939.

Boyle, Wheeler, Gresham & Terrell, of San Antonio and Sawnie B. Smith, of Edinburg, for appellants.

Herman A. Knopp and Jesse I. Edwards, both of San Antonio, for appellees.

MURRAY, Justice.

This suit was instituted by Dr. J. L. Lockhart, Roy Mitchell, Herbert Hill, Hillyer-Deutsch-Jarratt Company, and Home Owners' Loan Corporation, against Mrs. L. H. Bethea and others, to enforce by injunction alleged building restrictions in a subdivision known as Greenwood Village in the City of San Antonio, Texas, limiting the use of property in said subdivision for residence purposes only, until January 1, 1950.

The cause was submitted to a jury upon special issues and in keeping with the answers of the jury to the issues submitted judgment was entered granting plaintiffs below a permanent injunction against Mrs. L. H. Bethea and the other defendants, restraining them from violating the alleged building restrictions. From this judgment Mrs. L. H. Bethea and the other defendants below have prosecuted this appeal.

Mrs. Bethea acquired title to Lots One (1), Two (2), Three (3), Four (4), in Block Seventeen (17), New City Block Sixty-five Hundred Thirty-seven (6537), situated within the corporate limits of the City of San Antonio, by deed dated August 5, 1937. This deed contained the following provision: "This conveyance, however, is made subject to the conditions and restrictions contained in Deed Records in Vol. 769, page 531, and Vol. 1063, page 548, Bexar County Deed Records."

The instrument recorded in Vol. 769, page 531, is from San Antonio Development Company to present and future owners, and is called "Restrictions in Monte Vista Addition." This instrument con-

tained, among others, the following restrictions: "1st. Said addition shall be used for residence purposes only and no part thereof shall be used for business purposes; that no apartment house, double house, flat, lodging house, hotel, or any building for business purposes, or any other structure whatever other than a first-class private residence, with the customary outbuildings, garages and servants houses, shall be erected, placed or permitted in such addition."

The deed from San Antonio Development Company to Robert McGarraugh is recorded in Deed Records of Bexar County, Texas, in Vol. 1063, p. 548, and contains, among others, the following provision: "1st. Said property to be used for residence purposes only."

Thus it will be seen that Mrs. Bethea's deed incorporated, by reference, restrictions to the effect that the property was to be used for residence purposes only.

Mrs. Bethea was undertaking to construct a gasoline filling station on these lots and was only prevented from doing so by the injunction granted by the trial judge.

Appellants' first proposition is as follows: "Where a suit is brought by property owners in a subdivision who were not the original grantors against a purchaser of lots in said subdivision to enforce by injunction alleged building restrictions limiting the use of property in said subdivision for residence purposes only until January 1, 1950, and the subdivider and original grantor failed to impose said restrictions on each of the separate lots sold in said subdivision by failing to incorporate said restrictions in the deeds to the various lots sold in said subdivision, no general building scheme or plan for the development of a restricted residential subdivision came into existence and it was error for the Court to overrule defendants' motion for an instructed verdict in favor of the defendants."

Appellees contend that this proposition should be overruled, because it assumes that neither of the plaintiffs below were the original grantor of Mrs. Bethea. It is nowhere alleged in the pleadings that any one of the plaintiffs below was the original grantor of Mrs. Bethea. In fact, it is impossible to tell from the pleadings who Mrs. Bethea's grantor was. It is further clear. that the plaintiffs below pitched their entire cause of action on the theory that they had purchased lots in the Greenwood Village Addition, and that this addition was developed by Robert McGarraugh under a general plan, or scheme, to make of the addition a highly restricted residential district; that in pursuance of such scheme there were placed in the deeds to each purchaser from McGarraugh certain covenants and restrictions, among which was one to the effect that the property was to be used for residence purposes only.

There is no intimation in the pleadings that the suit was by an original grantor against an original grantee to enforce a covenant contained in a deed executed by such original grantor. The plaintiffs are bound by their pleadings and must prove the kind of a cause of action which they have plead. This is especially true in suits which are purely injunction suits. Magnolia Petroleum Co. v. de Garcia, 126 S.W. 2d 1006, decided March 29th, 1939, by this Court, and not yet reported [in State Reports]. Townes' Texas Pleading, 2d Edition, p. 426, states:

"The facts stated must truly represent the case and correspond to the proof to be offered. However good the cause of action or defense of the litigant may be, it is of no avail to him unless it has been plead. Even if the facts should be in evidence they would avail nothing, for pleading and proof are both necessary, they must correspond, and the recovery can only be based upon them both.

"The usual formula for expressing this rule is that: the allegata and the probata must correspond. If they do not, the variance is fatal as an objection to the testimony when offered, and if testimony should be improperly received, through inadvertence or error, it cannot be the basis of a judgment by the court."

Returning to a consideration of appellants' first proposition on its merits, it would seem that appellants' contention is that if the original subdivider of a restricted residential district should fail to incorporate, in each and every deed executed to purchasers of lots in the district, the same restrictions, or if restrictions should be omitted altogether from one or more deeds, there would be a failure of a general building scheme or plan for the development of a restricted residential subdivision, and that therefore the restriction would become of no effect and might be violated by any one, or at least could not be enforced by persons who were not the original grantor or his privies.

We overrule this contention. It occurs to us that where a subdivision has been placed upon the market with a declared intention that it will be developed as a restricted residential district and enhanced values are paid for the lots on this representation, the failure of the developer to include uniform restrictions in all deeds or his failure to include any restrictions in one or more deeds would not of itself take away all of the rights of the other purchasers to have the district maintained as a restricted residential district. If appellants' proposition is correct then a subdivider might sell hundreds of lots for enhanced prices, upon the representation that the district was to be a restricted residential district, and then by his failure, either through inadvertence or otherwise, to include such restrictions in one deed, destroy the entire scheme or plan for a restricted residential subdivision. We refrain from making such a holding.

In the case of Hooper v. Lottman, Tex. Civ.App., 171 S.W. 270, 272, it is said:

"So the general rule may be safely stated to be that where there is a general plan or scheme adopted by the owner of a tract, for the development and improvement of the property by which it is divided into streets and lots, and which contemplates a restriction as to the uses to which lots may be put, or the character and location of improvements thereon, to be secured by a covenant embodying the restriction to be inserted in the deeds to purchasers, and it appears from the language of the deed itself, construed in the light of the surrounding circumstances, that such covenants are intended for the benefit of all the lands, and that each purchaser is to be subject thereto, and to have the benefit thereof, and such covenants are inserted in all the deeds for lots sold in pursuance of the plan, a purchaser and his assigns may enforce the covenant against any other purchaser, and his assigns, if he has bought with actual or constructive knowledge of the scheme, and the covenant was part of the subject-matter of his purchase. De Gray v. Monmouth Beach Club House Co., 50 N.J.Eq. 329, 24 A. 388; Hano v. Bigelow, 155 Mass. 341, 29 N.E. 628.

"The facts in the case at bar bring it within the scope of the general rules stated, and we will but briefly advert to the contentions made by appellees in support of the judgment rendered in their favor.

"It is asserted, first, that a general plan of improvement is not shown because the restrictions in some deeds vary as to the distance from streets within which barns and similar buildings may be erected; also that in two instances deeds to lots were made without restrictions.

"Uniformity in the restrictions imposed on the lots is one of the strongest proofs of the existence of a building scheme. It is an evidentiary matter only, however, and any deviation from uniformity, as to restrictions imposed on any of the grantees, is often seized upon, as a defense to an action to enforce the covenant, on the theory that a general plan of improvement is not shown. There may, however, be departures from the usual restrictions in individual cases without destroying the integrity of the scheme of development as a whole. A want of absolute uniformity for reasons readily apparent does not militate against the view that the restrictions in the deed were in pursuance of a general scheme for improvement of the property. Coates v. Cullingford, 147 App. Div. 39, 131 N.Y.S. 700; Morrow v. Hasselman, 69 N.J.Eq. 612, 61 A. 369. And although some of the lots may have written restrictions imposed upon them and others may not, yet if the general plan has been maintained from its inception, without material departure therefrom, and if it has been understood and relied upon by those concerned, it is binding and enforceable inter sese. Allen v. Detroit, 167 Mich. 464, 133 N.W. 317, 36 L.R.A.(N.S.) 890."

Appellants seem to rely almost wholly on the case of Curlee v. Walker, 112 Tex. 40, 244 S.W. 497, to sustain their contention that a general plan or scheme for development cannot exist as a matter of law, unless the restrictions are contained in each and every deed to the purchasers, and unless the restrictions imposed on each and all of the lots are absolutely uniform. This decision does not sustain appellants. While it holds that uniform restrictions were contained in each deed to the lots, it does not go further and hold that unless these facts do exist there can be no general scheme of development, as a matter of law. In overruling appellants' first proposition we are supported also by Plaster v. Stutzman, Tex.Civ.App., 8 S.W.2d 750; Abernathy v.

Adoue, Tex.Civ.App., 49 S.W.2d 476; Continental Oil Co. v. Fennemore, 38 Ariz. 277, 299 P. 132; Green v. Gerner, Tex. Civ.App., 27 S.W.2d 828.

Appellants' second, third and fourth propositions involve the same general principles as are involved in the first proposition and they are overruled for the reasons stated in our discussion of the first proposition.

Appellants next contend that the following instruction, submitted in the court's main charge, constitutes a general charge, to-wit:

"In connection with Question One, you are instructed that in order to constitute 'a general building scheme or plan,' as is inquired about in Question One, it is necessary that the restrictions employed for that purpose be substantially uniform, and that they be imposed on substantially all the lots in the restricted area; also that such scheme or plan be intended and understood between the owner of such tract and substantially all the purchasers of lots therein.

"In case you answer Question No. One 'Yes,' you will in such case answer Questions Nos. Two, Three and Four; otherwise you will not answer Questions Nos. Two, Three and Four;"

We find no error in the court's giving the above definition or instruction in connection with the first issue submitted.

Art. 2189, R.C.S.1925, provides in part as follows: "In submitting special issues the court shall submit such explanations and definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on such issues."

The instruction given by the court was a necessary definition and explanation of what the court meant by the expression "a general building scheme or plan," and it is not such a general charge as is prohibited when a case is submitted on special issues.

The jury, in answer to special issue No. 5, found that on account of change of conditions, in the vicinity of the lots in question they are now reasonably unfit for residence purposes. Appellants contend that this finding entitles them to a judgment. We overrule this contention. It will be remembered that Mrs. Bethea purchased these lots in August, 1937, and only a short time thereafter began preparations for the building of a gasoline filling station. She accepted a deed containing the restrictions mentioned above, and the evidence does not show that conditions have materially changed since she purchased these lots. The evidence further shows "that no commercial building of any kind has ever been erected within Greenwood Village Addition; that it was from its inception and has continued to be a quiet, respectable, exclusive residential district of single family owner and occupied homes." The only material changed conditions in the vicinity of Greenwood Village Addition, with reference to encroachment by commercial buildings since this addition was put on the market, is the erection of a filling station directly across the street, on San Pedro Avenue, from the lots in question. This filling station is on unrestricted property, outside of Greenwood Village.

What was said in Continental Oil Co. v. Fennemore, 38 Ariz. 277, 299 P. 132, 134, is quite appropriate here. The court said:

"There is no merit in appellant's contention that the restrictions should not be enforced against it because the streets around this addition have been widened and are important arteries of traffic, rendering its property unfit for residential purposes * * *. 'It is a matter of common knowledge that boulevards, avenues, and broad highways best suited for the use of vehicles usually traverse suburban areas devoted to and favored for residential uses. To hold that the several broad boulevards and avenues which lead from Los Angeles to the sea have by their increasing travel destroyed restricted residential uses of property along their route would be contrary to both reason and experience.' * * *

"We agree with the appellant that it is a general rule of law that, where there has been a change in the uses to which property in a neighborhood is being put so that such property is no longer residential property, it would be oppressive and inequitable to give effect to restrictions where the changed condition of the locality has resulted from other causes than their breach. * * *

"The important question to be decided in this case is as to what principles are to govern in determining when this general rule is applicable to particular fact situations. Counsel for appellant contend that the facts in this case bring it within the operation of this general rule.

"The principle contended for by appellant is set forth in its brief as follows: 'Where a change affects only a portion of

the lots of the restricted area and that change is such that the original purpose of the restrictions has been destroyed, then equity should not interfere to enjoin such property owners from adapting their holdings to such uses as will render a profit to them. It follows that if the change in conditions affects but one or two lots of the restricted area and that change is such that the original purposes of the restrictions have been defeated, then the owner can no longer be forced to observe these restrictions to his damage.'

"This presents a clear-cut issue. In determining whether or not equity will enjoin the attempted violation of restrictive covenants, should the courts consider only the particular lot or lots on which the proposed structure is to be erected, as contended by appellant, or should consideration be given to the effect upon the entire restricted district of the alleged business encroachments on the adjoining unrestricted areas?

"Undoubtedly, when these restrictions were first imposed by Christy and wife, and when the properties were purchased by the respective grantees, and when the fine residences and apartment houses now in the addition were erected, the restrictions were mutually imposed and relied upon by all parties because of the knowledge that business would some day attempt to encroach upon the residential area embraced therein.

"It is also a matter of common knowledge and accepted human experience that, if the restrictive bars were let down for appellant in this case, the business encroachment on the remainder of the addition would be a matter of gradual yet steady development against which the home owners would be helpless, and the benefits and protection of the restrictive covenants would eventually be lost to all the co-owners therein. This problem arises immediately in connection with the twelve vacant lots scattered through the addition.

"The policy of the courts of this state should be to protect the home owners who have purchased lots relying upon, and have maintained and abided by, restrictions, from the invasion of those who attempt to break down these guaranties of home enjoyment under the claim of business necessities.

"We adhere to the doctrine that the lot of appellant cannot be considered separate and apart from its relation to the entire restricted addition. Though there may be a fringe of property all around the borders of a restricted addition whch would be more valuable for business than for residential purposes, this fact alone is not sufficient to warrant the breach of the restrictions by these owners. As was stated in the case of Trustees of Columbia College v. Thacher, supra [87 N.Y. 311, 41 Am.Rep. 365], which is the leading case relied upon by the appellant: 'The general current of business affairs has reached and covered the entire premises fronting on Sixth avenue, both above and below the lot in question. If this was all, however, the plaintiffs would be justified in their claim, for it is apparent from the agreement that such encroachment was anticipated, and that the parties to it intended to secure the property in question from the disturbance which business would necessarily produce.'

"The rule which we adopt is well stated in Swan v. Mitshkun et al., 207 Mich. 70, 173 N.W. 529, 530, wherein the court said: 'Those owning property in a restricted residential district or neighborhood, and especially those who have their homes there and have been led to buy or build in such locality by reason of restrictive covenants running with the land imposed upon the street, block, or sub-division in which they have purchased, are entitled to protection against prohibited invasion regardless of how close business may crowd around them on unrestricted property, provided the original plan for a residential district has not been departed from in the restricted district, street, or block and the restrictive requirements have been generally enforced, or accepted and complied with by purchasers.' * * *

"And also in the case of Miles v. Clark et al., supra [44 Cal.App. 539, 187 P. 167], as follows: 'The fact that apart from and surrounding the tract some business has grown up, and that the land has become more valuable in consequence, in no manner entitles defendants to be relieved of the restrictions they have created. This condition is but the natural result of the improvement of the various tracts, and the fact that the property may have become more valuable thereby for business purposes is immaterial.'

"And also in Bohm v. Silberstein, 220 Mich. 278, 189 N.W. 899, page 901, as follows: 'The fact that adjoining or surrounding property is now used for business purposes does not alter the character of the subdivision itself, and the owners of property therein are entitled to have it preserved for the purpose for which it must be assumed they purchased it.'

"Practically all the modern authorities support this view. Strong v. Hancock, supra [201 Cal. 530, 258 P. 60]; Sanders v. Campbell, 231 Mich. 592, 204 N.W. 767; Evans v. Foss, 194 Mass. 513, 80 N.E. 587, 9 L.R.A.,N.S., 1039, 11 Ann.Cas. 171; Cuneo v. Chicago Title & Trust Co., 337 Ill. 589, 169 N.E. 760; Dolan v. Brown, 338 Ill. 412, 170 N.E. 425; Todd v. North Avenue Holding Corporation, 121 Misc. 301, 201 N.Y.S. 31, affirmed 208 App.Div. 854, 204 N.Y.S. 953; Frick v. Foley, 102 N.J.Eq. 430, 141 A. 172; Frick v. Northern Trust Co. et al. (N.J.Err. & App.) 146 A. 914; Hunter v. Wood, 277 Pa. 150, 120 A. 781; Brown v. Huber, 80 Ohio St. 183, 88 N.E. 322, 28 L.R.A.,N.S., 705; Spahr v. Cape, 143 Mo.App. 114, 122 S.W. 379; Pierce v. St. Louis Union Trust Co., 311 Mo. 262, 278 S.W. 398; Ludgate v. Somerville, 121 Or. 643, 256 P. 1043, 54 A.L.R. 837."

What has been said above requires that all other propositions of appellants be overruled and the order granting the injunction affirmed.

Affirmed.